**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| New Beginnings Care, LLC, et al. | ) | Case No.. 1: 16-bk-10272-NWW |
| | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| New Beginnings Care, LLC, et al., | ) | Adv. Proc. 16- |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Think Anew, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

# COMPLAINT
---

New Beginnings Care, LLC, et al. ("Debtors"), as Debtors and Debtors-in-Possession, by its counsel, pursuant to 11 U.S.C. §§ 542 and 543 for their Complaint against Think Anew, LLC ("Think Anew") state as follows:

**JURISDICTION AND VENUE**

1. On January 22, 2016 (the "Petition Date"), Debtors filed its voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. This Court has jurisdiction over this proceeding (the "Adversary Proceeding") pursuant to 28 U.S.C. §§ 157 and 1334.

3. This Adversary Proceeding constitutes a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (E), and (O).

4. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. Service on the Defendant is sufficient if made in accordance with Rule 7004 by serving counsel for Think Anew that has appeared in this case on its behalf.

## FACTUAL ALLEGATIONS

6. On or about October 31, 2012, Think Anew entered into a *Managed Services Agreement* (the "New Beginnings MSA") and a *Telecommunications Equipment Lease and Service Agreement* (the "New Beginnings Lease") with New Beginnings Care, LLC ("New Beginnings").

7. The New Beginnings MSA provided for Think Anew to furnish certain IT-related services and benefits to New Beginnings and to certain affiliates and/or subsidiaries of New Beginnings, and for New Beginnings to pay to Think Anew certain fees for such services on a monthly basis.

8. The New Beginnings Lease provided for Think Anew to furnish certain IT-related equipment owned by Think Anew, along with certain services incidental thereto, to New Beginnings, and for New Beginnings to pay to Think Anew rental and service fees for such equipment on a monthly basis.

9. On or about January 2, 2013, Think Anew and New Beginnings executed a letter amendment (the "New Beginnings MSA Amendment") to the New Beginnings MSA, which amended Exhibit "C" to the New Beginnings MSA by adding three (3) additional affiliates and/or subsidiaries of New Beginnings to the list of entities covered by the New Beginnings MSA.

10. True and correct copies of the New Beginnings MSA and the New Beginnings

MSA Amendment (collectively, the "Amended New Beginnings MSA") are attached hereto as collective Exhibit "A."

11. A true and correct copy of the New Beginnings Lease is attached hereto as Exhibit "B."

12. On or about March 10, 2015, Think Anew entered into a *Managed Services Agreement* (the "Campus Healthcare MSA") with Campus Healthcare & Rehab, LLC d/b/a Campus Health Care Center ("Campus Healthcare"), which was substantially similar to the New Beginnings MSA.

13. In connection with the Campus Healthcare MSA, New Beginnings executed a *Continuing Guaranty* that is attached to and included within the Campus Healthcare MSA, under which New Beginnings unconditionally guaranteed the full payment and performance of all of Campus Healthcare's obligations under the terms and conditions of the Campus Healthcare MSA.

14. A true and correct copy of the Campus Healthcare MSA is attached hereto as Exhibit "C."

15. Also on or about March 10, 2015, Think Anew entered into a *Managed Services Agreement* (the "Cedarcreek Healthcare MSA") with Cedarcreek Healthcare & Rehab, LLC d/b/a Cedarcreek Health Care Center ("Cedarcreek Healthcare"), which was substantially similar to the New Beginnings MSA.

16. In connection with the Cedarcreek Healthcare MSA, New Beginnings executed a *Continuing Guaranty* that is attached to and included within the Cedarcreek Healthcare MSA, under which New Beginnings unconditionally guaranteed the full payment and performance of all of Cedarcreek Healthcare's obligations under the terms and conditions of the Cedarcreek Healthcare MSA.

17. A true and correct copy of the Cedarcreek Healthcare MSA is attached hereto as Exhibit "D."

18. On or about December 2, 2013, Think Anew entered into a *Telecommunications Equipment Lease and Service Agreement* (the "Abbeville Healthcare Lease") with Abbeville Healthcare & Rehabilitation, LLC ("Abbeville Healthcare"), which was substantially similar to the New Beginnings Lease.

19. In connection with the Abbeville Healthcare Lease, New Beginnings executed a *Continuing Guaranty* that is attached to and included within the Abbeville Healthcare Lease, under which New Beginnings unconditionally guaranteed the full payment and performance of all of Abbeville Healthcare's obligations under the terms and conditions of the Abbeville Healthcare Lease.

20. A true and correct copy of the Abbeville Healthcare Lease is attached hereto as Exhibit "E."

21. Also on or about December 2, 2013, Think Anew entered into a *Telecommunications Equipment Lease and Service Agreement* (the "Brookside Healthcare Lease") with Brookside Healthcare & Rehabilitation, LLC ("Brookside Healthcare"), which was substantially similar to the New Beginnings Lease.

22. In connection with the Brookside Healthcare Lease, New Beginnings executed a *Continuing Guaranty* that is attached to and included within the Brookside Healthcare Lease, under which New Beginnings unconditionally guaranteed the full payment and performance of all of Brookside Healthcare's obligations under the terms and conditions of the Brookside Healthcare Lease.

23. A true and correct copy of the Brookside Healthcare Lease is attached hereto as Exhibit "F."

24. Also on or about December 2, 2013, Think Anew entered into a *Telecommunications Equipment Lease and Service Agreement* (the "Eastman Healthcare Lease") with Eastman Healthcare & Rehabilitation, LLC ("Eastman Healthcare"), which was substantially similar to the New Beginnings Lease.

25. In connection with the Eastman Healthcare Lease, New Beginnings executed a *Continuing Guaranty* that is attached to and included within the Eastman Healthcare Lease, under which New Beginnings unconditionally guaranteed the full payment and performance of all of Eastman Healthcare's obligations under the terms and conditions of the Eastman Healthcare Lease.

26. A true and correct copy of the Eastman Healthcare Lease is attached hereto as Exhibit "G."

27. Also on or about December 2, 2013, Think Anew entered into a *Telecommunications Equipment Lease and Service Agreement* (the "Red Oak Healthcare Lease") with Red Oak Healthcare & Rehabilitation, LLC ("Red Oak Healthcare"), which was substantially similar to the New Beginnings Lease.

28. In connection with the Red Oak Healthcare Lease, New Beginnings executed a *Continuing Guaranty* that is attached to and included within the Red Oak Healthcare Lease, under which New Beginnings unconditionally guaranteed the full payment and performance of all Red Oak Healthcare's obligations under the terms and conditions of the Red Oak Healthcare Lease.

29. A true and correct copy of the Red Oak Healthcare Lease is attached hereto as Exhibit "H."

30. Also on or about December 2, 2013, Think Anew entered into a *Telecommunications Equipment Lease and Service Agreement* (the "Stoneybrook Healthcare

Lease") with Stoneybrook Healthcare & Rehabilitation, LLC ("Stoneybrook Healthcare"), which was substantially similar to the New Beginnings Lease.

31. In connection with the Stoneybrook Healthcare Lease, New Beginnings executed a *Continuing Guaranty* that is attached to and included within the Stoneybrook Healthcare Lease, under which New Beginnings unconditionally guaranteed the full payment and performance of all of Stoneybrook Healthcare's obligations under the terms and conditions of the Stoneybrook Healthcare Lease.

32. A true and correct copy of the Stoneybrook Healthcare Lease is attached hereto as Exhibit "I."

33. Pursuant to the terms and conditions of the Amended New Beginnings MSA, the New Beginnings Lease, the Campus Healthcare MSA, the Cedarcreek Healthcare MSA, the Abbeville Healthcare Lease, the Brookside Healthcare Lease, the Eastman Healthcare Lease, the Red Oak Healthcare Lease, and the Stoneybrook Healthcare Lease, along with other possible substantially similar Managed Service Agreements and/or Equipment Leases (collectively, the "Agreements"), Think Anew has leased certain equipment and provided certain services to, *inter alia,* each of the following entities, which are referred to collectively herein as the "New Beginnings Entities":

    a. New Beginnings Care, LLC;
    b. Abbeville Healthcare & Rehab, LLC;
    c. Brookside Healthcare & Rehab, LLC;
    d. Campus Health Care Center, LLC;
    e. Cedarcreek Healthcare & Rehab, LLC;
    f. Eastman Healthcare & Rehab, LLC;
    g. Edwards Redeemer Nursing, LLC;
    h. Goodwill Nursing Home, LLC;
    i. Jeffersonville Healthcare & Rehab, LLC;
    j. John Reed Nursing Home, LLC;
    k. Mount Pleasant Health & Rehab, LLC
    l. Oceanside Nursing & Rehab Center, LLC;

    m. Pinewood Nursing Center, LLC;
    n. Red Oak Healthcare & Rehab, LLC;
    o. Rockmart Healthcare & Rehab, LLC;
    p. Savannah Beach Nursing & Rehab, LLC;
    q. Stoneybrook Healthcare & Rehab, LLC; and
    r. Woodlands Healthcare, LLC.

34. Under the terms and conditions of the Agreements, the New Beginnings Entities agreed to pay to Think Anew, among other possible things, the following:

    a. Think Anew's monthly invoices reflecting lease fees, service fees, and other fees and charges owed to Think Anew under the Agreements;

    b. Certain late fees in the event any invoice was not timely paid as required;

    c. Reimbursement of Think Anew's attorney's fees, costs, and expenses incurred in connection with efforts to collect any amounts owed to Think Anew under the terms and conditions of the Agreements; and

    d. Any fees, costs, or expenses incurred by Think Anew in connection with the repossession or retrieval of any equipment owned by Think Anew and leased of used by any of the New Beginnings Entities.

35. On or about June 10, 2015, the Defendant executed in favor of Think Anew an *Unconditional Guaranty* (the "Guaranty"), in which the Defendant personally and unconditionally guaranteed to Think Anew, *inter alia,* the payment of all indebtedness liability of any kind owed to Think Anew by the New Beginnings Entities, or any of them, as well as attorney's fees, costs, and expenses incurred by Think Anew in connection with enforcement of Think Anew's rights under the Guaranty.

36. A true and correct copy of the Guaranty is attached hereto as Exhibit "J."

7

## COUNT I

## REQUEST FOR RELIEF UNDER 11 U.S.C. §§ 542 AND 543

37. Debtors incorporate by reference the allegations contained in Paragraphs 1 through 36 of the Complaint as if fully set forth herein.

38. Debtors have replaced Think Anew with Care Serve for its IT-related services.

39. Upon Care Serve's analysis of Debtors' IT needs relative to its operation of its long term care facilities, Care Serve discovered and brought to the attention of Debtors that Debtors were being charged for services that were not being provided.

40. Phones could have been outright purchased for three (3) months of lease payments charged by Think Anew.

41. Phones were installed in 2013 and remained in place despite being discontinued and no longer supported. Services were duplicated such as multiple DSL lines with only one line in use.

42. Services were charged which were never provided such as AT&T MIS Services.

43. Think Anew overcharged for its cloud storage services charging $5,900.00 per month as opposed to Care Serve charges of $1842.00 per month.

44. Contract default terms by Think Anew were onerous to the point of being an unenforceable penalty. Upon default, Think Anew's contract provided for the entire sixty (60) month term to be due and payable.

45. The new providers' terms are a thirty (30) day cancellation period if operations cease at the facility and for termination for any other reason, fifty (50%) of the three year term of contract will be due.

46. Attached hereto as Exhibit "K" is a summary prepared by the Debtors of the

services of which Debtors were billed that were not received, services for which charges were billed that were not necessary, and services for which Debtors were billed an exorbitant amount.

47. Pursuant to 11 U.S.C. §§ 542 and 543, the Debtors request that the Court order the return of these sums and that Think Anew be required to turnover such sums that were improperly charged to Debtors in the amount hereafter alleged.

## COUNT II

## FRAUDULENT MISREPRESENTATION

48. Debtors incorporate by reference the allegations contained in Paragraphs 1 through 47 of the Complaint as if fully set forth herein.

49. Debtors allege that the Defendant fraudulently made misrepresentations with regard to the amount of services required by the Defendant, the type of services required by the Debtors, and the reasonable costs for the services.

50. Debtors allege that they reasonably relied on these misrepresentations and as a result thereof were induced to enter into the agreements wherein Think Anew provided unnecessary services, resulted in the Debtors being billed for services that were not provided, and resulted in the Debtors being grossly overcharged the normal and customary rate for such services that were needed by the Debtors.

51. As a result thereof, the Debtors allege that the Debtors suffered damages in the amount hereinafter alleged.

## COUNT III

## NEGLIGENT MISREPRESENTATION

52. Debtors incorporate by reference the allegations contained in Paragraphs 1 through 51 of the Complaint as if fully set forth herein.

53. Tennessee has adopted Section 522 of the Restatement (2nd) of Torts as the guiding principle in negligent misrepresentation actions against business persons. <u>Bethlehem Steel Corp. vs. Ernst and Whinney</u>, [822 S.W.2d 592, 595 (Tenn. 1991)].

54. Debtors allege that the information furnished by Think Anew to the Debtors to induce Debtors to enter into the agreements with Think Anew was false and inaccurate, was reasonably relied upon by the Debtors, and therefore subjects Think Anew to liability for the losses caused to the Debtors by then justifiable reliance on the information.

55. Defendants actions as alleged herein have resulted in damages to the Debtors as hereinafter alleged.

WHEREFORE, the Debtors request that

a. Summons issue against Think Anew requiring it to answer this Complaint in the time and manner required by law;

b. The Court award monetary damages against Think Anew in the amount of $473,372.00 or in such other amount as is shown by the facts of this case; and

c. The Debtors received such other and further relief as is just upon the premises.

**RESPECTFULLY SUBMITTED** this 14th day July, 2016.

SCARBOROUGH & FULTON

By: /s/David J. Fulton
David J. Fulton, #006102
701 Market Street, Suite 1000
Chattanooga, Tennessee 37402
(423) 648-1880
(423) 648-1881 (facsimile)
DJF@sfglegal.com

Attorneys for Debtors-In-Possession