# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| New Beginnings Care, LLC, et. al., | ) | Case No. 1:16-bk-10272-NWW |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | Jointly Administered |

_____

| | | |
|---|---|---|
| New Beginnings Care, LLC., et. al. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Proc. No. <u>16 ap 01028</u> |
| | ) | |
| Think Anew, LLC | ) | |
| c/o Sarah Elizabeth Wilson | ) | |
| 1076 Highland Colony Parkway | ) | |
| Concourse 600, Suite 100 | ) | |
| Ridgeland, MS 39157 | ) | |
| Defendant. | ) | |

_____

## COVER SHEET

_____

Attached find Exhibit filed on behalf of New Beginnings Care, LLC et. al.

1.      Attached hereto as <u>Exhibits "A" through "K"</u> to Complaint {Doc 1}.

                    SCARBOROUGH & FULTON

            By:     /s/David J. Fulton_____
                    David J. Fulton, #006102
                    701 Market Street, Suite 1000
                    Chattanooga, Tennessee  37402
                    (423) 648-1880
                    (423) 648-1881 (facsimile)
                    <u>DJF@sfglegal.com</u>

                    Attorneys for Debtors-In-Possession




**EXHIBIT A**

Managed Services Agreement

This Service Agreement (the "Agreement") is entered into by and between New Beginnings Care LLC, located at 4704 Hixson Pike, Hixson, TN 37343 herein referred to as Client, and Think Anew LLC, 7570 Old Canton Road, Madison, MS 39110, herein after referred to as Service Provider, effective as of date this Agreement is executed (the "Effective Date").

WHEREAS, Client desires to retain Service Provider to manage and support Client's existing information technology infrastructure located at the addresses on Appendix C

The parties hereby AGREE as follows:

**Term of Agreement**

The Agreement shall remain in force from the Effective Date for a term of sixty (60) months, (the "Initial Term"), unless earlier terminated as set out below. The Agreement shall automatically renew for a subsequent one year term beginning on the day immediately following the end of the Initial Term, unless either party gives the other ninety (90) days prior written notice of its intent not to renew this Agreement.

This Agreement may be terminated by Client during any term of this Agreement upon ninety (90) days written notice to Service Provider if Service Provider (1) materially breaches any substantive term or condition of this Agreement and fails to remedy same within thirty (30) days after receiving written notice of such breach from Client, or (2) terminates or suspends its business operations.

This Agreement may be terminated by Service Provider during any term of this Agreement upon ninety (90) days written notice to the Client.

If either party terminates this Agreement, Service Provider will reasonably assist Client in the orderly termination of services, including the transfer of the services to a successor provider if a successor is designated by Client. Client agrees to pay Service Provider for the time and expenses of rendering such assistance.

Page 1 of 8
Client's Initials
Think Anew LLC.

---

**Services**

The services to be performed by Service Provider hereunder are remote-type services as set out in the attached Appendix A (the "Covered Services"). Services requested by Client that are not included in the Covered Services, such as on-site services and support, will be considered as "Additional Services." Additional Services will be billed at the rates set out in Appendix B, along with any expenses reasonably incurred in the performance thereof, and will be included as separate items on the invoice.

Service Provider may provide support for Client's hardware and systems, provided that all hardware is covered under a currently active vendor support contract, and all applicable software is genuine, currently licensed, and vendor-supported. Should any hardware or systems fail to meet these provisions, Client understands and acknowledges that Client shall be solely responsible and liable for bringing the same into compliance. Client will defend, indemnify, and hold harmless Service Provider with regard to the installation, configuration, or use of Client's hardware, software, and systems.

Service Provider will provide ongoing monitoring and security services of all critical devices starting on the date when such equipment is implemented to enable monitoring. Should a problem be discovered during monitoring, Service Provider may make reasonable attempts to rectify the condition through remote means.

It is understood that, from time-to-time, Service Provider may be required to contact outside contractors to perform certain services in relation to Client's technology needs, upon Client's approval. Contractor's fees and expenses in these situations shall be invoiced to Service Provider either directly by the contractor or as part of Service Provider's monthly invoice.

Service Provider shall not be responsible for delays or failure in performance resulting from acts beyond the control of Service Provider, including but not limited to natural disasters, acts of God, war, terrorism, any change in or adoption of any law or regulation, or any failures resulting from internet outages.

**Coverage**

Covered Services will be provided to Client by Service Provider Monday through Friday during Service Provider's normal business hours of 8:00 a.m. to 5:00 p.m., excluding public holidays. Network and system monitoring services and certain support desk assistance (outlined in Appendix A) will be provided 24/7/365. Other Covered Services that are performed outside Service Provider's normal business hours are considered emergency services and will be subject to the emergency rates set out in Appendix B. On-site support and other Additional Services will be provided as set forth in Appendix B.

Page 2 of 8
Client's Initials
Think Anew LLC.

---

**Fees and Payment Schedule**

Fees for Covered Services will be $1,200.00 per calendar month per facility, plus any reasonable expenses incurred by Service Provider in connection with the provision of such services. Additional facilities to be included under this Agreement in the future will be attached and updated on Appendix C. Fees for Covered Services are to be paid in advance and are nonrefundable. Fees for Covered Services and any related expenses shall be invoiced to Client on a monthly basis, and any fees or expenses incurred for Additional Services shall be included on the invoices as separate items. Invoices will be due and payable on the first day of each month. Covered Services and any Additional Services may be suspended without further notice, and a late fee of $50.00 will be assessed, if payment is not received in-hand within thirty (30) days of the invoice due date. Service Provider will strive to provide clear, timely, and accurate invoices; however, Client is encouraged to examine each invoice and shall notify Service Provider of any errors in writing before the due date.

In the event Client is in default for nonpayment of any invoiced amount(s), Client hereby waives all notices of default and nonpayment and shall be responsible for all reasonable attorneys' fees and related costs incurred by Service Provider should Service Provider institute collection efforts.

**Limitation of Liability**

Client agrees to defend, indemnify, and hold harmless Service Provider with regard to any and all demands, allegations, actions, claims, controversies, damages, and liability, either directly or indirectly resulting from, or alleged to have resulted from, the use, misuse, inability to use, failure to use, operation of, installation of, configuration of, or otherwise involving or stemming from any portion of Client's information technology systems and infrastructure, regardless of the source or cause and even if Service Provider has been advised of the possibility of such damages. This includes, without limitation, allegations involving the unlawful release or disclosure of protected or confidential data, allegations of damages involving computer viruses, spyware, or other malware, allegations related to the loss, theft, or inaccessibility of data, and claims for all other damages and relief of any type or nature whatsoever, whether at law or in equity, including without limitation actual damages, special damages, compensatory damages, liquidated damages, consequential damages, punitive damages, and claims for equitable relief.

In the event of a breach of this Agreement by Service Provider, Client's exclusive remedy shall be the termination of this Agreement.

**Warranties and Disclaimer**

Client shall inform Service Provider in writing of any issues concerning services or work performed by Service Provider or Service Provider's contractor, and Service Provider will make reasonable efforts to solve the problem. Said services and work shall be deemed accepted in full if Service Provider is not so informed within five business days of the performance of the work.

Page 3 of 8
Client's Initials
Think Anew LLC.

---

During the course of providing services, you may purchase or lease from Service Provider various technology equipment, software, and other peripherals (collectively "Equipment"). SERVICE PROVIDER DISCLAIMS ALL WARRANTIES WITH REGARD TO SUCH EQUIPMENT, WHETHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE.

**Non-Solicitation of Employees**

Neither party shall solicit or offer employment to any employee of the other party, whether directly or indirectly, during their employment or within one year of termination of their employment, except with the other party's prior written approval in each case.

**Confidentiality**

Each Party shall hold in trust for the other party and shall not disclose to any non-party to the Agreement, any confidential information of the other party. Confidential information is information which relates to either party's research, development, trade secrets, or business affairs, but does not include information which is generally known or reasonably ascertainable by nonparties.

**Arbitration**

Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Unless the parties agree otherwise, arbitration proceedings shall be held in Madison County, Mississippi. The arbitrator's decision shall be final and legally binding, and judgment may be entered thereon.

Each party shall be responsible for its share of the arbitration-related fees and expenses in accordance with the applicable rules of arbitration. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including reasonable attorneys' fees for having to compel arbitration or to defend or enforce the award.

**Severability**

If any provision of this Agreement is found to be illegal or unenforceable in a judicial proceeding, arbitration, or other proceeding, such provision shall be severed, and the remaining provisions of the Agreement shall remain in force and binding on the parties hereto to the fullest extent allowable by law.

**Choice of Law**

All controversies arising from this Agreement shall be governed by the laws of the State of Mississippi, regardless of any applicable choice of law provisions, and, to the extent not expressly

Page 4 of 8
Client's Initials
Think Anew LLC.

by the mandatory arbitration provision above, shall be adjudicated only in the state or federal courts located in Madison County, Mississippi.

### Notices

Notices required by this Agreement may be sent via U.S. Mail, first class and postage prepaid, or via facsimile, to the following:

If to Service Provider:
Don Glidewell
Think Anew
P. O. Box 669
Madison MS 39130
(601) 345-4234 (facsimile)

If to Client:
LAURIE HOOKS
New Beginnings Care
4704 Hixson Pk., Hixson, TN 37343
585.343.0979(facsimile)

### Entire Agreement

This Agreement, including the appendices attached hereto, constitutes the entire agreement between Client and Service Provider and supersedes all prior oral and written representations and understandings between the parties as to the subject matter herein. Each party acknowledges that no other understanding, representations, or agreements have been made or exist regarding the subject matter covered by this Agreement except as specifically set out in writing herein. Any amendments or modifications shall be specified in writing and executed by both Client and Service Provider.

### Acceptance of Terms

Client acknowledges that the person signing this Agreement on its behalf is duly authorized to do so, and represents and warrants that such person is acting within the scope of his or her authority to fully and unconditionally bind Client with regard to the terms and conditions of this Agreement. The signature of both parties shall evidence acceptance of this Agreement.

NEW BEGINNINGS CARE                THINK ANEW, LLC

By: _____        By: _____

Name: LAURIE G. HOOKS              Don Glidewell

Title: VP of IT                    President

Date Signed: 10.31.12              Date Signed: 10/31/12

Page 5 of 8

Client's Initials _____
Think Anew LLC _____

---

**Appendix A.**

Covered Services consist of the following remote support services:

**Support Desk**
- Ticket creation
- Troubleshooting computer issues
- Resetting passwords
- Resetting hung applications
- Troubleshooting and solving printing issues
- Clinical and billing software support (AHT, PCC, etc.) *
- User account setup
- User account removal and terminations **

**Network (including Wireless) Setup**
- Wireless Access Point troubleshooting
- Networking equipment troubleshooting
- Network and System monitoring
- Network escalation contact to network providers
- Tracking of networking system issues
- Provide point of contact for carrier (AT&T, Windstream, etc.) needs
- Troubleshooting with carriers
- Network security

**Hosting IT Infrastructure**
- Domain controller setup, configuration, and management
- SQL server setup, configuration, and management
- Terminal services setup, configuration, and management
- Clinical software setup, configuration, and management
- Email setup, configuration, and management

**Management IT Support**
CIO-level input and support as requested based on present and future business strategies of Client

---
* In certain cases, activities may require support only available during regular business hours.
** Approval required from necessary management team and may require support only available during regular business hours.

Page 6 of 8

Client's Initials _____
Think Anew LLC _____

---

**Appendix B**

Any services that are outside the Covered Services as provided in Appendix A are considered as Additional Services. Additional Services include, without limitation, the following:

- Services related to hardware or software replacement, configuration, and/or upgrade, such as laptops, desktop PC's, monitors, networks, and other peripherals. Service Provider will obtain approval from Client prior to purchasing and replacing any hardware or software.

- All on-site services. Any work that requires a technician onsite at any facility will be billed according to the rates set out below.

Travel costs will be billed for travel to/the Client's facility, based on the hourly rates set out below. Service Provider will obtain approval in hour travel costs from Client prior to sending a technician or representative to a site.

The following hourly rates will apply to all Additional Services performed by Service Provider, in addition to any related expenses incurred in the performance of Additional Services.

| Work Role | Normal Rate | Emergency Rate / Weekends, Holidays, and After Normal Business Hours |
|---|---|---|
| Associate Engineer | $85.50/hour | $125.00/hour |
| Systems Engineer | $135.00/hour | $200.00/hour |
| Travel Costs (Each Way) | $45.00/hour | $45.00/hour |

Page 7 of 8

Client's Initials _____
Think Anew LLC _____

---

**Appendix C**

| Facility | Facility Address |
|---|---|
| New Beginnings Care | 4704 Hixson Pike, Hixson, TN 37343 |
| Abbeville Healthcare & Rehab | 206 Main Street East, Abbeville, GA 31001 |
| Brookaire Health & Rehab | 800 Brookside Drive, Little Rock, AR 72205 |
| Chenal Heights Healthcare & Rehab LLC | #3 Chenal Heights Drive, Little Rock, AR 72223 |
| Eastman Healthcare & Rehab | 556 Chester Highway, Eastman, GA 31023 |
| Mount Pleasant Health & Rehab | 904 Midden Acres Drive, Mount Pleasant, TN 38474 |
| Pinewood Nursing Center | 433 N McGriff Street, Whigham, GA 39897 |
| Red Oak Healthcare & Rehab | 1010 Thomas Street, Loudon, AR 72086 |
| Stonybrook Health & Rehab | 1300 Military Road, Benton, AR 72015 |
| Woodlands Healthcare | 625 Coastal Hwy 17 N, Midway, GA 31320 |

Page 8 of 8

Client's Initials _____
Think Anew LLC _____

---

**Upper Left Panel:**

# THINKANEW

RE:     Managed Services Agreement
        Parties – Think Anew, LLC, and New Beginnings Care, LLC
        Date of Agreement – October 31st 2012
        Amendment 1

Dear Stephanie

This letter is to confirm our agreement to amend and/or modify the above-referenced Managed Services Agreement (the "Agreement"), as follows:

The following facilities to shall be added to the current list of facilities contained in Appendix C to the Agreement:

Jeffersonville Healthcare & Rehab, 113 Spring Valley Drive, Jeffersonville, GA 31044
Goodwill Nursing Home, 4373 Houston Ave, Macon, GA 31206
Edwards Redeemer Healthcare & Rehab, 1530 Northeast Grand Blvd, Oklahoma City, OK 73117

A copy of the proposed Appendix C, as amended, is enclosed. Except as otherwise specifically stated herein, the remaining terms and conditions of the Agreement, including any prior amendments thereto (if any), shall not be altered by this current amendment and shall remain in full force and effect.

If this amendment meets with your approval, please sign this letter as indicated below, along with the signature line on the proposed Appendix C, and once accepted, this amendment shall be effective as of January 1st 2013.  If you have any questions or need any further information, please do not hesitate to contact me.

Sincerely,

Think Anew, Inc.

Don Gladden
President

I accept this amendment to the Managed Services Agreement on behalf of New Beginnings Care, LLC.

By: _____    Date Signed: 18/2/2013
Name: Stephanie M. Parker    Title: VP of Finance

---

**Upper Right Panel:**

## Appendix C
(As amended by agreement 1/2013)

| Facility | Facility Address |
|---|---|
| New Beginnings Care | 4704 Elkton Pike, Elkton, TN 37343 |
| Abbeville Healthcare & Rehab | 206 Main Street East, Abbeville, GA 31001 |
| Brookview Health & Rehab | 800 Brookside Drive, Little Rock, AR 72205 |
| Chenal Heights Healthcare & Rehab LLC | 65 Chenal Heights Drive, Little Rock, AR 72223 |
| Eastman Healthcare & Rehab | 556 Chester Highway, Eastman, GA 31025 |
| Mount Pleasant Health & Rehab | 904 Holden Acres Drive, Mount Pleasant, TN 38474 |
| Pinewood Nursing Center | 433 N McGrorT Street, Whigham, GA 39897 |
| Red Oak Healthcare & Rehab | 1010 Barnes Street, Lenoile, GA 72056 |
| Simonbrook Health & Rehab | 2200 Military Road, Benton, AR 72015 |
| Woodlands Healthcare | 625 Coastal Hwy 17 N, Midway, GA 31320 |
| Jeffersonville Healthcare & Rehab, LLC | 113 Spring Valley Drive, Jeffersonville, GA 31044 |
| Goodwill Nursing Home | 4373 Houston Ave, Macon, GA 31206 |
| Edwards Redeemer Healthcare & Rehab | 1530 Northeast Grand Blvd, Oklahoma City, OK 73117 |

NEW BEGINNINGS CARE, LLC          THINK ANEW, LLC

By: _____          By: _____
Name: Stephanie M. Parker          Don Gladden, President
Title: VP of Finance

Date Signed: _____          Date Signed: 3/2/13

Client's Initials _____
Think Anew LLC _____

---

**Lower Left Panel:**

# THINKANEW

**EXHIBIT B**

### TELECOMMUNICATIONS EQUIPMENT LEASE AND SERVICE AGREEMENT

This Equipment Lease and Service Agreement (the "Agreement") is entered into by and between New Beginnings Care LLC, located at 4704 Elkton Road, Madison, TN 37343 herein referred to as Client, and Think Anew LLC, 7570 Old Canton Road, Madison, MS herein after referred to as Service Provider, effective October 5th 2012 (the "Effective Date").

1.    Lease of Equipment. Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the personal property (together with all replacement parts, additions, repairs and accessories) described in the Addendum attached hereto as Exhibit A (the "Addendum"), at the location described in the Addendum (the "Site"), which equipment shall be referred to herein as the "Leased Equipment."

2.    Term. This Lease is for a term of sixty (60) months (the "Initial Term"), expiring October 31st 2017.  The Agreement shall automatically renew for a subsequent one year term beginning on the day immediately following the expiration of the Initial Term, unless either party gives the other ninety (90) days prior written notice of its intent to not renew this Agreement.

3.    Rentals and Services.

(a)    For said term, or any portion thereof, Lessee shall pay to Lessor rental and service fees (collectively "Fees") for the Leased Equipment in the amounts set forth in the Addendum, payable in equal monthly payments each due and payable on the last day of each month until the termination of this Lease. All Fees shall be paid at Lessor's place of business or such other place as the Lessor may designate by written notice to the Lessee. All Fees shall be paid without notice or demand and without abatement, deduction or set-off of any amount whatsoever. The operation and use of the Leased Equipment shall be at the risk of Lessee, and not of Lessor and the obligation of Lessee to pay Fees hereunder shall be unconditional. In the event that any payment to be made by Lessee shall not be paid within thirty (30) days after it shall be due, Lessee shall, on demand, pay a delinquency charge to Lessor in an amount equal to one percent (1%) of all payments so overdue and such delinquency charge shall be deemed "additional rent" for all purposes under this Lease.

Client's Initials _____
Service Provider Initials _____

---

**Lower Right Panel:**

(b)    Upon execution of this lease, Lessee shall also pay to Lessor the last month's payment of the Fees described in Section 3(a) and a non-refundable fee ("Lease Initiation Fee") in a sum equal to one month's payment of the Fees described in Section 3(a).

(c)    In consideration for the Fees, Lessor agrees to provide the following services to Lessee:

(i)     Installation of the Leased Equipment at the locations designated by Lessee which are reasonably acceptable to the Lessor;

(ii)    Operational assistance and expertise in connection with the use of the Leased Equipment;

(iii)   Management of Telco Service provider bills;

(iv)    Moves, Adds, and Changes as it pertains to voicemail, phone numbers, and connections;

(v)     Coordination of repair and warranty service; and

(vi)    Any additional service agreed to in writing by both Lessor and Lessee.

4.    Damage to Leased Equipment. Lessee shall be liable to Lessor for any loss or damage to the Leased Equipment during the term of this Lease. This liability may be discharged, in the event of damage to the Leased Equipment which does not constitute total destruction of the entirety of the Leased Equipment, by Lessee paying to the Lessor the actual cash replacement value of any unit or units of the Leased Equipment totally destroyed, or by paying the actual cost of repair to any unit or units which are damaged but are capable of repair, as appropriate, less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage.  If the Leased Equipment is totally destroyed in its entirety, the liability of the Lessee to pay the Fees may be discharged by paying to Lessor all the Fees due thereon, plus all the Fees to become due thereon less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage.  Lessor shall not be obligated to undertake, by litigation or otherwise, the collection of any claim against any person for loss or damage of the Leased Equipment.

5.    No Warranties by Lessor as to Leased Equipment. EXCEPT AS SPECIFICALLY CONTAINED IN THIS AGREEMENT, INCLUDING THE EXHIBITS ATTACHED HERETO, LESSOR, NOT BEING THE MANUFACTURER OF THE LEASED EQUIPMENT, NOR MANUFACTURER'S AGENT, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OR CAPACITY OF THE MATERIAL, EQUIPMENT OR WORKMANSHIP IN THE LEASED EQUIPMENT, NOR ANY WARRANTY THAT THE LEASED EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT OF LESSEE, IT BEING AGREED THAT ALL SUCH RISKS REGARDING THE LEASED EQUIPMENT, AS BETWEEN THE

Client's Initials _____
Service Provider Initials _____

LESSOR AND THE LESSEE, ARE TO BE BORNE BY THE LESSEE AT ITS SOLE RISK AND EXPENSE. Notwithstanding the foregoing, Lessor does warrant and represent that the Leased Equipment will be installed by Lessor in a proper manner to allow the Leased Equipment to function as contemplated by the parties.

No oral agreement, guaranty, promise, condition, representation or warranty shall be binding; all prior conversations, agreements or representations related hereto should to the Leased Equipment are integrated herein, and no modification hereof shall be binding unless in writing signed by Lessor.

If (1) the manufacturer of the Leased Equipment shall fail to comply with its warranty obligations to such an extent that the Leased Equipment is, or becomes, materially unfit for its intended uses, (2) the Lessee has exhausted all attempts required under the manufacturer's warranty to allow the manufacturer an opportunity to cure, and (3) the manufacturer of the Leased Equipment has so materially breached its warranty obligations that the Lessee wishes to have replacement equipment of like kind and quality supplied by the same or a different manufacturer, Lessee shall deliver written notice of such intent to Lessor by certified mail, return receipt requested. Lessor shall have ten (10) days from the date of receipt of such notice to, at Lessor's option, either (a) obtain and install replacement equipment of like kind and quality from the same or a different manufacturer, at no additional cost to Lessee; or (b) declare this Lease terminated, in which case Lessor shall have no further obligations under this Lease. Should Lessor so terminate this Lease, Lessor shall have no liability whatsoever to the Lessee, including, but not limited to, liability for interruption of business or other damages flowing from the unfitness of the Leased Equipment. In the event of any conflict between this paragraph and paragraph 23, "Limitation of Liability," the terms of paragraph 23, "Limitation of Liability" shall control.

6.   Compliance With Laws. Lessee agrees, at its own cost and expense (a) to pay all charges and expenses in connection with the operation of each Item of Leased Equipment, (b) to comply with all governmental laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Leased Equipment, and (c) except as specifically delegated to Lessor in this Lease, to make all repairs and replacements required to be made to maintain the Leased Equipment in good condition, reasonable wear and tear excepted.

7.   Taxes. Lessee agrees that, during the term of this Lease, in addition to the rent provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the Lessee in the Leased Equipment or upon the use or operation thereof, and as additional rent will promptly pay or reimburse the Lessor for all taxes (other than sales taxes paid by Lessor with respect to its purchase of the Leased Equipment), assessments and other governmental charges levied or assessed against and paid by the Lessor on account of its ownership of the Leased Equipment or any part thereof, or the use or operation thereof or the leasing thereof to the Lessee.

8.   Covenants of Lessee. Lessee covenants at all times during this Lease to provide adequate hardware to allow for the installation and operation of the Leased Equipment, with the minimum specifications for such hardware being set forth on the Addendum.

Page - 3 - of 9
Client's Initials
Service Provider

9.   Title of the Lessor. Title to the Leased Equipment shall at all times remain in the Lessor and Lessee will at all times protect and defend, at its own cost and expense, the title of the Lessor from and against all claims, liens and legal processes of creditors of the Lessee and keep all Leased Equipment free and clear from all such claims, liens and processes. Lessee specifically authorizes Lessor to prepare and deliver any and all filing statements, notices or other documents necessary to perfect its interest in the Leased Equipment. The Leased Equipment is and shall remain personal property. Upon the expiration or termination of this Lease, the Lessee in Lessee's sole expense shall return the Leased Equipment as contemplated to Lessor at Lessee's place of business, or to such other place as Lessor and Lessee agree upon, and in the same condition as when received by Lessee, reasonable wear and tear resulting from the thereof alone excepted.

10.   Possession, Place of Use, Changes in Location. So long as Lessee shall not be in default under this Lease, it shall be entitled to the possession and use of the Leased Equipment in accordance with the terms of this Lease. The Leased Equipment shall be used in the conduct of the lawful business of the Lessee, and be kept at the Site where it was installed and shall not be permanently removed from such location without the prior written consent of the Lessor. The Lessor shall not, without Lessor's prior written consent, part with possession or control of the Leased Equipment or attempt to sell, pledge, mortgage or otherwise encumber any of the Leased Equipment or attempt to part by sale, pledge, assign, transfer or otherwise dispose of or encumber any interest under this Lease.

11.   Performance of Obligations.

(a)   If the Lessee shall fail duly and promptly to perform any of its obligations under the provisions of this Lease to be performed by the Lessee, the Lessor may, at its option, immediately or at any time thereafter perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense or liability incurred by Lessor in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessee to the Lessor, shall be payable by the Lessee upon demand as additional Fees.

(b)   If the Lessor shall fail duly and promptly to perform any of its obligations under the provisions of this Lease to be performed by the Lessor, the Lessee may, at its option, immediately or at any time thereof perform the same for the account of Lessor without thereby waiving such default, and any amount paid or expense or liability incurred by Lessee in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessor to the Lessee, shall be payable by the Lessor upon demand.

12.   Right of Inspection. Lessor shall have the right from time to time during reasonable business hours to enter upon the Lessee's premises or elsewhere for the purpose of confirming the existence, condition and maintenance of the Leased Equipment and for the provision of the services contemplated by this Lease.

Page - 4 - of 9
Client's Initials
Service Provider

13.   Defaults by Lessee. There shall be deemed to be a breach of this Lease by Lessee if:

(a)   Lessee shall default in the payment of any amount due hereunder and such default shall continue for a period of fifteen (15) days; and/or

(b)   Lessee shall default in the performance of any other covenant, condition or agreement herein and such default shall continued uncured for fifteen (15) days after written notice thereof to Lessee by Lessor; and/or

(c)   Lessee ceases doing business as a going concern, or if a petition is filed by or against Lessee under the Bankruptcy Code or any amendment thereto; and/or

(d)   Lessee removes, sells, transfers, encumbers, sublets, or parts with possession of the Leased Equipment or any part thereof, or authorizes or attempts to do any of the foregoing.

In the event of a breach of this Lease by Lessee as herein defined in (a) through (d) above, Lessor, at its option, shall have the right to exercise any one or more of the following remedies:

(a)   Lessor may demand forthwith that the Leased Equipment be delivered to Lessor at Lessee's expense at such place as Lessor shall designate; and/or

(b)   Lessor and/or its agents may, without notice or liability or legal process, enter into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where the Leased Equipment may be located or is believed by the Lessor to be located, and repossess all or any part of the Leased Equipment, disconnecting and separating all thereof from any other property, Lessee hereby expressly waiving all further rights to possession; and/or

(c)   Lessor may cease the provision of any and all services contemplated by Section 3(c) of this Lease; and/or

(d)   Lessor may declare all sums due and to become due hereunder immediately due and payable; and/or

(e)   Lessor may recover immediately as and for liquidated damages for the breach of this Lease, and not as a penalty, any and all unpaid Fees that accrued on or before the breach of this Lease by Lessee, plus an amount equal to the difference between the aggregate Fees reserved hereunder for the unexpired term of this Lease and the then aggregate rental value of all Leased Equipment for such unexpired term; provided, however, that if any statute governing any proceeding in which such damages are to be proved specifies the amount of such claim, Lessor shall be entitled to prove as and for damages for the breach an amount equal to that allowed under such statute. The provisions of this Section (e) shall

Page - 5 - of 9
Client's Initials
Service Provider

be without prejudice to any rights given to the Lessor by such statute to prove for any amounts allowed thereby; and/or

(f)   Lessor may proceed by appropriate legal proceedings, as described in Section 22, to enforce performance by the Lessee of any and all of the applicable covenants of this Lease as well as any other remedy herein provided.

Should any legal proceedings be instituted by Lessor to recover any sums due to or become due to Lessor hereunder and/or for possession of any or all of the Leased Equipment and/or for any other relief, the non-prevailing party in such legal proceedings shall pay the reasonable attorneys' fees of the prevailing party.

14.   Default by Lessor. There shall be deemed to be a breach of this Lease by Lessor if:

(a)   Lessor shall default in the performance of any covenants herein and such default shall continued uncured for fifteen (15) days after written notice thereof to Lessor by Lessee; or,

(b)   Lessor ceases doing business as a going concern, or if a petition is filed by or against Lessor under the Bankruptcy Code or any amendment thereto.

In the event of a breach of this Lease by Lessor as herein defined in (a) through (c) above, Lessee, at its option, shall have the right to exercise any one or more of the following remedies:

(a)   Lessee may terminate this Lease, without any further obligation to the Lessor.

(b)   Lessee may proceed by appropriate legal proceedings, as described in Section 22, to enforce performance by the Lessor of any and all of the applicable covenants of this Lease as well as any other remedy herein provided.

Should any legal proceedings be instituted by Lessee hereunder, the non-prevailing party in such legal proceedings shall pay the reasonable attorneys' fees of the prevailing party.

15.   Indemnity. Lessee shall indemnify and save Lessor harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from injury to person or property resulting from or based upon the actual or alleged use or operation of, but not the installation or maintenance of, any or all of the Leased Equipment, except for any such claim based upon the gross negligence or intentional wrongdoing of the Lessor; and shall, at its own cost and expense, defend any and all such suits which may be brought against Lessor, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against Lessor in any such action or actions, provided, however, that Lessor shall give Lessee written notice of any such claim or demand. Lessor shall indemnify and save Lessee harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from injury

Page - 6 - of 9
Client's Initials
Service Provider

to person or property resulting from or based upon the installation or maintenance of the Leased Equipment, or the gross negligence or intentional wrongdoing of the Lessor and shall, at its own cost and expense, defend any and all such suits which may be brought against Lessee, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against Lessee in any such action or actions, provided, however, that Lessor shall give Lessee written notice of any such claim or demand.

16.    Assignment. This Lease and all rights of Lessor hereunder shall be assignable by Lessor without Lessee's consent, but Lessee shall not be obligated to pay assignee of the Lease except after written notice of such assignment from the Lessee. Without the prior written consent of Lessor, which shall not be unreasonably withheld, the Lessee shall not assign this Lease or its interest hereunder nor enter into any sublease with respect to the Leased Equipment covered hereby.

17.    Assignment as to Maintenance. Lessor shall allow Lessee to assume all rights of any existing Service Agreement if permissible by the warranty provider. In the event Lessor should default under this Lease. Any existing Service Agreement shall not be terminated by either party thereto without the consent of either party.

18.    Further Assurances. Either party shall execute and deliver the other party, upon request, such instruments and assurances as such requesting party deems necessary or advisable for the confirmation or perfection of this Lease and the parties' respective rights hereunder.

19.    Notices. All notices relating herein shall be delivered in person to an officer of the Lessor or Lessee, or shall be mailed by certified mail to Lessor or Lessee at its respective address set forth below or at any later address last known to the sender.

If to Lessor:    Think Anew, LLC
Attn: Don Glidewell
PO Box 669
Madison, MS 39110

If to Lessee:    New Beginnings Care
Attn: Laurie Hooks
4204 Hixson Pike
Hixson, TN 37343

20.    Remedies, Waivers. No remedy hereunder shall be exclusive of any other remedy herein or of any other remedy otherwise available at law or in equity, but each shall be cumulative and is addition to every other remedy. A waiver of a default shall not be a waiver of any other or a subsequent default.

21.    Irrevocability. Except in the event of a default by Lessor which is not timely cured in accordance with the terms of this Lease, this Lease is irrevocable for the term hereof

Page - 7 - of 9

as set forth in Section 2 hereof and for the aggregate Fees herein reserved in Section 3, and the Fees shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or for any other reason. Delinquent installments of Fees shall bear interest at the highest lawful contract rate or one percent (1%) per month, whichever be the lesser.

22.    Applicable Law; Arbitration. This Lease shall be interpreted under the laws of the State where the Site is located. ANY DISPUTE UNDER THIS AGREEMENT WHICH CANNOT BE RESOLVED BY THE PARTIES SHALL BE SUBMITTED TO BINDING ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION UNLESS THE PARTIES MUTUALLY AGREE OTHERWISE. THE ARBITRATION SHALL BE CONDUCTED IN THE CITY WHERE THE SITE IS LOCATED BEFORE AN ARBITRATOR TO BE MUTUALLY AGREED UPON BY THE PARTIES HERETO. NO PARTY TO ANY DISPUTE SHALL BE ENTITLED TO ANY PUNITIVE DAMAGES. THE ARBITRATOR'S FEES SHALL BE SHARED EQUALLY BY THE PARTIES. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND WILL BE ENTITLED TO ENFORCEMENT IN THE COURTS OF THE STATE WHERE THE SITE IS LOCATED.

23.    Limitation of Liability. If Lessor is found to be in material breach of this Lease, Lessee's sole remedy against Lessor shall be the termination of this Lease and cessation of Lessee's future liability for any of the Fees specified in paragraph 3. Lessor shall have no other liability whatsoever to the Lessee including, but not limited to, liability for interruption of business or other consequential damages. If any other provision of this Lease is found to be in conflict with this paragraph, the provisions of this paragraph shall control.

24.    Entire Agreement. This instrument constitutes the entire agreement between Lessor and Lessee, and it shall not be amended, altered or changed except by a written agreement signed by the parties hereto.

25.    Amendment. This Lease may only be amended by written agreement signed by both parties provided, however, the parties may amend the list of Lease Equipment specified in any Addendum by execution of a revised addendum in substantially the form of Exhibit A.

26.    Severability Clause. If any clause or provision of this Lease is illegal, invalid or unenforceable under present or future laws effective during the term of this Lease, then it is the intention of the parties hereto that the remainder of this Lease shall not be affected thereby. It is also the intention of the parties to this Lease that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Lease a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable. The caption of each paragraph hereof is added as a matter of convenience only and shall be considered to be of no effect in the construction of any provision or provisions of this Lease.

Page - 8 - of 9

IN WITNESS WHEREOF, Lessor and Lessee have caused this Lease to be executed by their duly authorized representatives as of the day and year first above written.

LESSOR    LESSEE

Think Anew, LLC    New Beginnings Care, LLC

Signed    Date    Signed    10.26.12

Don Glidewell CEO    Print Name Laurie Hooks
VP of IT

Page - 9 - of 9

EXHIBIT A

New Beginnings Care

| QTY | Item Description | Monthly fees |
|---|---|---|
|  | IP PBX | $750.00 ea |
|  | Managed POE Switch | Waived |
| 4 | Analogue Connection | Waived |
| 10 | Phone Trunks | Waived |
| 11 | Multifunction IP phone | $35.00 ea |
|  | Conference Phone | $70.00 ea |
|  | Monthly Total | $705.00 |

Page - 10 - of 9



EXHIBIT
C

**Managed Services Agreement**

This Service Agreement (the "Agreement") is entered into by and between Campus Health Care Center, located 196 Colonial Drive, Youngstown, OH 44503 herein referred to as Client, and Think Anew LLC, PO Box 669, Madison, MS 39130, hereinafter referred to as Service Provider, effective as of February 1st 2015 (the "Effective Date").

WHEREAS, Client desires to retain Service Provider to manage and support Client's existing information technology infrastructure located at the address above.

The parties hereby AGREE as follows:

**Term of Agreement**

The Agreement shall remain in force from the Effective Date for a term of sixty (60) months, (the "Initial Term"), unless earlier terminated as set out below. The Agreement shall automatically renew for a subsequent one year term beginning on the day immediately following the end of the Initial Term, unless either party gives the other ninety (90) days prior written notice of its intent not to renew this Agreement.

This Agreement may be terminated by Client during any term of this Agreement upon ninety (90) days written notice to Service Provider (1) materially breaches any substantive term or condition of this Agreement and fails to remedy same within thirty (30) days after receiving written notice of such breach from Client, or (2) terminates or suspends its business operations.

This Agreement may be terminated by Service Provider during any term of this Agreement upon ninety (90) days written notice to the Client.

If either party terminates this Agreement, Service Provider will reasonably assist Client in the orderly termination of services, including the transfer of the services to a successor provider if a successor is designated by Client. Client agrees to pay Service Provider for the time and expenses of rendering such assistance.

**Services**

Page 2 of 6                        Client's Initials
                                   Think Anew LLC.

---

The services to be performed by Service Provider hereunder are remote-type services as set out in the attached Appendix A (the "Covered Services"). Services requested by Client that are not "Additional Services." Additional Services will be billed at the rates set out in Appendix B, along with any expenses reasonably incurred in the performance thereof, and will be included as separate items on the invoice.

Service Provider may provide support for Client's hardware and systems, provided that all hardware is covered under a currently active vendor support contract, and all applicable software is genuine, currently licensed, and vendor-supported. Should any hardware or systems fail to meet these provisions, Client understands and acknowledges that Client shall be solely responsible and liable for bringing the same into compliance. Client will defend, indemnify, and hold harmless Service Provider with regard to the installation, configuration, or use of Client's hardware, software, and systems.

Service Provider will provide ongoing monitoring and security services of all critical devices starting on the date when such equipment is implemented to enable monitoring. Should a problem be discovered during monitoring, Service Provider may make reasonable attempts to rectify the condition through remote means.

It is understood that, from time-to-time, Service Provider may be required to contact outside contractors to perform certain services in relation to Client's technology needs, upon Client's approval. Contractor's fees and expenses in these situations shall be invoiced to Service Provider either directly by the contractor or as part of Service Provider's monthly invoice.

Service Provider shall not be responsible for delays or failure in performance resulting from any cause beyond the control of Service Provider, including but not limited to natural disasters, acts of God, war, terrorism, any change in or adoption of any law or regulation, or any failures resulting from internet outages.

**Coverage**

Covered Services will be provided to Client by Service Provider Monday through Friday during Service Provider's normal business hours of 8:00 a.m. to 5:00 p.m., excluding public holidays. Network and system monitoring services and remote support desk assistance (outlined in Appendix A) will be provided 24/7/365. Other Covered Services that are performed outside Service Provider's normal business hours are considered emergency services and will be subject to the emergency rates set out in Appendix B. On-site support and other Additional Services will be provided as set forth in Appendix B.

Page 2 of 8                        Client's Initials
                                   Think Anew LLC.

---

**Fees and Payment Schedule**

Fees for Covered Services will be $1,200.00 per calendar month per facility, plus any reasonable expenses incurred by Service Provider in connection with the provision of such services. Additional Services to be included under this Agreement in the future will be attached and updated on Appendix C. Fees for Covered Services and any related expenses shall be invoiced to Client on a monthly basis, and any fees or expenses incurred for Additional Services shall be included on the invoices as separate items. Invoices will be due and payable on the first day of each month. Covered Services and any Additional Services may be suspended without further notice, and a late fee of $50.00 will be assessed, if payment is not received in-hand within thirty (30) days of the invoice due date. Service Provider will strive to provide clear, timely, and accurate invoices; however, Client is encouraged to examine each invoice and shall notify Service Provider of any errors in writing before the due date.

In the event Client is in default for nonpayment of any invoiced amount(s), Client hereby waives all notices of default and nonpayment and shall be responsible for all reasonable attorneys' fees and related costs incurred by Service Provider should Service Provider institute collection efforts.

**Limitation of Liability**

Client agrees to defend, indemnify, and hold harmless Service Provider with regard to any and all demands, allegations, actions, claims, controversies, damages, and liability, either directly or indirectly resulting from, or alleged to have resulted from, the use, misuse, inability to use, failure in use, operation of, installation of, configuration of, or otherwise involving or stemming from any portion of Client's information technology system and infrastructure, regardless of the source or cause and even if Service Provider has been advised of the possibility of such damages. This includes, without limitation, allegations involving the unlawful release or disclosure of protected or confidential data; allegations of damages involving computer viruses, spyware, or other malware; allegations related to the loss, theft, or inaccessibility of data; and claims for all other damages and relief of any type or nature whatsoever, whether at law or in equity, including without limitation actual damages, special damages, compensatory damages, liquidated damages, consequential damages, punitive damages, and claims for equitable relief.

In the event of a breach of this Agreement by Service Provider, Client's exclusive remedy shall be the termination of this Agreement.

**Warranties and Disclaimer**

Client shall inform Service Provider in writing of any issues concerning services or work provided by Service Provider or Service Provider's contractor, and Service Provider will make reasonable efforts to solve the problem. Said services and work shall be deemed accepted in full if Service Provider is not so informed within five business days of the performance of the work.

Page 3 of 8                        Client's Initials
                                   Think Anew LLC.

---

During the course of providing services, you may purchase or lease from Service Provider various technology equipment, software, and other peripherals (collectively "Equipment"). SERVICE PROVIDER DISCLAIMS ALL WARRANTIES WITH REGARD TO SUCH EQUIPMENT, WHETHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE.

**Non-Solicitation of Employees**

Neither party shall solicit or offer employment to any employee of the other party, whether directly or indirectly, during their employment or within one year of termination of their employment, except with the other party's prior written approval in each case.

**Confidentiality**

Each Party shall hold in trust for the other party and shall not disclose to any non-party to the Agreement, any confidential information of the other party. Confidential Information is information which relates to either party's research, development, trade secrets, or business affairs, but does not include information which is generally known or reasonably ascertainable by nonparties.

**Arbitration**

Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Unless the parties agree otherwise, arbitration proceedings shall be held in Madison County, Mississippi. The arbitrator's decision shall be final and legally binding, and judgment may be entered thereon.

Each party shall be responsible for its share of the arbitration-related fees and expenses in accordance with the applicable rules of arbitration. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including reasonable attorneys' fees for having to compel arbitration or to defend or enforce the award.

**Severability**

If any provision of this Agreement is found to be illegal or unenforceable in a judicial proceeding, arbitration, or other proceeding, such provision shall be severed, and the remaining provisions of the Agreement shall remain in force and binding on the parties hereto to the fullest extent allowable by law.

**Choice of Law**

All controversies arising from this Agreement shall be governed by the laws of the State of Mississippi, regardless of any applicable choice of law provisions, and, to the extent not covered

Page 4 of 8                        Client's Initials
                                   Think Anew LLC.

by the mandatory arbitration provision above, shall be adjudicated only in the state or federal courts located in Madison County, Mississippi.

### Notices

Notices required by this Agreement may be sent U.S. Mail, first class and postage prepaid, or via facsimile, to the following:

| If to Service Provider: | If to Client |
|---|---|
| Don Glidewell | |
| Think Anew | |
| P. O. Box 669 | |
| Madison, MS 39130 | |
| (601) 345-4234 (facsimile) | (facsimile) |

### Entire Agreement

This Agreement, including the appendices attached hereto, constitutes the entire agreement between Client and Service Provider and supersedes all prior oral and written representations and understandings between the parties as to the subject matter herein. Each party acknowledges that no other understanding, representations, or agreements have been made or exist regarding the subject matter covered by this Agreement except as specifically set out in writing herein. Any amendments or modifications shall be specified in writing and executed by both Client and Service Provider.

### Acceptance of Terms

Client acknowledges that the person signing this Agreement on its behalf is duly authorized to do so, and represents and warrants that such person is acting within the scope of his or her authority to fully and unconditionally bind Client with regard to the terms and conditions of this Agreement. The signature of both parties shall evidence acceptance of this Agreement.

| CAMPUS HEALTH CARE CENTER | THINK ANEW, LLC |
|---|---|
| By: | By: |
| Name: | Don Glidewell |
| Title: CFO | President |
| Date Signed: | Date Signed: |

### Appendix A

Covered Services consist of the following remote support services:

**Support Desk**

- Ticket creation
- Troubleshooting level 1 computer issues
- Resetting passwords
- Resetting hung applications
- Troubleshooting and solving printing issues
- Clinical and billing software support (ABT, PCC, etc.) *
- User account setup **
- User account removal and terminations **

**Network (including Wireless) Setup**

- Basic Wireless Access Point troubleshooting
- Basic Networking equipment troubleshooting
- Basic Network and System monitoring
- Network escalation contact to network providers
- Tracking of network/system issues
- Provide point of contact for carrier (AT&T, Windstream, etc.) needs
- Basic Troubleshooting with carriers
- Network security

**Hosting IT Infrastructure**

- Domain controller setup, configuration, and management
- SQL server setup, configuration, and management
- Terminal services setup, configuration, and management
- Clinical software setup, configuration, and management
- Email setup, configuration, and management

**Management IT Support**

CIO-level input and support as requested based on present and future business strategies of Client

* Is certain cases, executives may require support only available during regular business hours.
** Approval required these customer management areas and may receive support only available during regular business hours.

### Appendix B

Any services that are outside the Covered Services as provided in Appendix A are considered as Additional Services. Additional Services include, without limitation, the following:

* Services related to hardware or software replacement, configuration, and/or upgrades, such as laptops, desktop PC's, monitors, batteries, and other peripherals. Service Provider will obtain approval from Client prior to purchasing and replacing any hardware or software.

* All on-site services. Any work that requires a technician on-site at any facility will be billed according to the rates set out below.

Travel costs will be billed for travel to/from Client's facility, based on the hourly rates set out below. Service Provider will obtain approval to incur travel costs from Client prior to sending a technician or representative to a site.

The following hourly rates will apply to all Additional Services performed by Service Provider, in addition to any related expenses incurred in the performance of Additional Services:

| Work Role | Normal Rate | Emergency Rate (Weekends, Holidays, and After Normal Business Hours |
|---|---|---|
| Associate Engineer | $85.00/hour | $125.00/hour |
| Systems Engineer | $135.00/hour | $200.00/hour |
| Travel Costs (Each Way) | $45.00/hour | $45.00/hour |

### Continuing Guaranty for
### Managed Services Agreement

As the management company of the above-referenced Client herein, and as an inducement to Service Provider to make and enter into the Managed Services Agreement (the "Agreement") with the Client, the undersigned, on behalf of such Client, fully, absolutely, irrevocably, and unconditionally guarantees (1) the Client's payments of its Fees and any other sums that are payable or may become payable under this Agreement, and (2) the performance of all other obligations the Client may have under this Agreement, all upon the same terms, conditions, and limitations as set out in this Agreement. This Continuing Guaranty shall include and be fully effective as to any subsequent revisions, additions, amendments, or addendums to this agreement and/or to any Exhibit hereto, including without limitation any additional Fees and sums that may result from any additions to or revisions of the Agreement and/or the pricing thereof, whether or not the undersigned executed, had notice of, was otherwise a party to such revision, addition, amendment, or addendum. The undersigned also fully consents to be bound by the Applicable Law and Arbitration provisions of Paragraph 21 hereof.

NEW BEGINNINGS CARE, LLC

| By: | Date Signed: 3-10-15 |
|---|---|
| Print Name: | Position: CEO |



EXHIBIT
D

## Managed Services Agreement

This Service Agreement (the "Agreement") is entered into by and between Cedarcreek Health Care Center, located 4121 Ted Ave NW, Warren, OH 44485 herein referred to as Client, and Think Anew LLC, PO Box 669, Madison, MS 39110, hereinafter referred to as Service Provider, effective as of February 1st 2015 (the "Effective Date").

WHEREAS, Client desires to retain Service Provider to manage and support Client's existing information technology infrastructure located at the address above.

The parties hereby AGREE as follows:

### Term of Agreement

The Agreement shall remain in force from the Effective Date for a term of sixty (60) months, (the "Initial Term"), unless earlier terminated as set out below. The Agreement shall automatically renew for a subsequent one year term beginning on the day immediately following the end of the Initial Term, unless either party gives the other ninety (90) days prior written notice of its intent not to renew this Agreement.

This Agreement may be terminated by Client during any term of this Agreement upon ninety (90) days written notice to Service Provider if Service Provider (1) materially breaches any substantive term or condition of this Agreement and fails to remedy same within thirty (30) days after receiving written notice of such breach from Client, or (2) terminates or suspends its business operations.

This Agreement may be terminated by Service Provider during any term of this Agreement upon ninety (90) days written notice to the Client.

If either party terminates this Agreement, Service Provider will reasonably assist Client in the orderly termination of services, including the transfer of the services to a successor provider if a successor is designated by Client. Client agrees to pay Service Provider for the time and expenses of rendering such assistance.

Page 1 of 8

Client's initials

Think Anew LLC.

### Services

The services to be performed by Service Provider hereunder are remote-type services as set out in the attached Appendix A (the "Covered Services"). Services requested by Client that are not included in the Covered Services, such as on-site services and support, will be considered as "Additional Services." Additional Services will be billed at the rates set out in Appendix B, along with any expenses reasonably incurred in the performance thereof, and will be included as separate items on the invoice.

Service Provider may provide support for Client's hardware and systems, provided that all hardware is covered under a currently active vendor support contract, and all applicable software is genuine, currently licensed, and vendor-supported. Should any hardware or systems fail to meet these provisions, Client understands and acknowledges that Client shall be solely responsible and liable for bringing the same into compliance. Client will defend, indemnify, and hold harmless Service Provider with regard to the installation, configuration, or use of Client's hardware, software, and systems.

Service Provider will provide ongoing monitoring and security services of all critical devices starting on the date when such equipment is implemented to enable monitoring. Should a problem be discovered during monitoring, Service Provider may make reasonable attempts to rectify the condition through remote means.

It is understood that, from time-to-time, Service Provider may be required to contact outside contractors to perform certain services in relation to Client's technology needs, upon Client's approval. Contractor's fees and expenses in these situations shall be invoiced to Service Provider either directly by the contractor or as part of Service Provider's monthly invoice.

Service Provider shall not be responsible for delays or failure in performance resulting from acts beyond the control of Service Provider, including but not limited to natural disasters, acts of God, war, terrorism, any change in or adoption of any law or regulation, or any failures resulting from internet outages.

### Coverage

Covered Services will be provided to Client by Service Provider Monday through Friday during Service Provider's normal business hours of 8:00 a.m. to 5:00 p.m., excluding public holidays. Network and system monitoring services and system support desk assistance (outlined in Appendix A) will be provided 24/7/365. Other Covered Services that are performed outside Service Provider's normal business hours are considered emergency services and will be subject to the emergency rates set out in Appendix B. On-site support and other Additional Services will be provided as set forth in Appendix B.

Page 2 of 8

Client's initials

Think Anew LLC.

### Fees and Payment Schedule

Fees for Covered Services will be $1,200.00 per calendar month per facility, plus any reasonable expenses incurred by Service Provider in connection with the provision of such services. Additional facilities to be included under this Agreement in the future will be attached and updated on Appendix C. Fees for Covered Services are to be paid in advance and are nonrefundable. Fees for Covered Services and any related expenses shall be invoiced to Client on a monthly basis, and any fees or expenses incurred for Additional Services shall be included on the invoices at separate items. Invoices will be due and payable on the first day of each month. Covered Services and any Additional Services may be suspended without further notice, and a late fee of $50.00 will be assessed, if payment is not received in-hand within thirty (30) days of the invoice due date. Service Provider will strive to provide clear, timely, and accurate invoices; however, Client is encouraged to examine each invoice and shall notify Service Provider of any errors in writing before the due date.

In the event Client is in default for nonpayment of any invoiced amount(s), Client hereby waives all notices of default and nonpayment and shall be responsible for all reasonable attorneys' fees and related costs incurred by Service Provider should Service Provider institute collection efforts.

### Limitation of Liability

Client agrees to defend, indemnify, and hold harmless Service Provider with regard to any and all demands, allegations, actions, claims, controversies, damages, and liability, either directly or indirectly resulting from, or alleged to have resulted from, the use, misuse, inability to use, failure to use, operation of, installation of, configuration of, or otherwise involving or stemming from any portion of Client's information technology system and infrastructure, regardless of the source or cause and even if Service Provider has been advised of the possibility of such damages. This includes, without limitation, allegations involving the unlawful release or disclosure of protected or confidential data; allegations of damages involving computer viruses, spyware, or other malware; allegations related to the loss, theft, or inaccessibility of data; and claims for all other damages and relief of any type or nature whatsoever, whether at law or in equity, including without limitation actual damages, special damages, compensatory damages, liquidated damages, consequential damages, punitive damages, and claims for equitable relief.

In the event of a breach of this Agreement by Service Provider, Client's exclusive remedy shall be the termination of this Agreement.

### Warranties and Disclaimer

Client shall inform Service Provider in writing of any issues concerning services or work provided by Service Provider or Service Provider's contractor, and Service Provider will make reasonable efforts to solve the problem. Said services and work shall be deemed accepted in full if Service Provider is not so informed within five business days of the performance of the work.

Page 3 of 8

Client's initials

Think Anew LLC.

During the course of providing services, you may purchase or lease from Service Provider various technology equipment, software, and other peripherals (collectively "Equipment"). SERVICE PROVIDER DISCLAIMS ALL WARRANTIES WITH REGARD TO SUCH EQUIPMENT, WHETHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE.

### Non-Solicitation of Employees

Neither party shall solicit or offer employment to any employees of the other party, whether directly or indirectly, during their employment or within one year of termination of their employment, except with the other party's prior written approval in each case.

### Confidentiality

Each Party shall hold in trust for the other party and shall not disclose to any non-party to the Agreement, any confidential information of the other party. Confidential Information is information which relates to either party's research, development, trade secrets, or business affairs, but does not include information which is generally known or reasonably ascertainable by nonparties.

### Arbitration

Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules. Unless the parties agree otherwise, arbitration proceedings shall be held in Madison County, Mississippi. The arbitrator's decision shall be final and legally binding, and judgment may be entered thereon.

Each party shall be responsible for its share of the arbitration-related fees and expenses in accordance with the applicable rules of arbitration. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs and fees, including reasonable attorneys' fees for having to compel arbitration or to defend or enforce the award.

### Severability

If any provision of this Agreement is found to be illegal or unenforceable in a judicial proceeding, arbitration, or other proceeding, such provision shall be severed, and the remaining provisions of the Agreement shall remain in force and binding on the parties hereto to the fullest extent allowable by law.

### Choice of Law

All controversies arising from this Agreement shall be governed by the laws of the State of Mississippi, regardless of any applicable choice of law provisions, and, to the extent not secured

Page 4 of 8

Client's initials

Think Anew LLC.

---

**Page 5 quadrant:**

by the mandatory arbitration provision above, shall be adjudicated only in the state or federal courts located in Madison County, Mississippi.

**Notices**

Notices required by this Agreement may be sent via U.S. Mail, first class and postage prepaid, or via facsimile, to the following:

If to Service Provider:            If to Client:
Don Glidewell
Think Anew
P.O. Box 669
Madison, MS 39130
(601) 345-4234 (facsimile)                                  (facsimile)

**Entire Agreement**

This Agreement, including the appendices attached herein, constitutes the entire agreement between Client and Service Provider and supersedes all prior oral and written representations and understandings between the parties as to the subject matter herein. Each party acknowledges that no other understanding, representations, or agreements have been made or exist regarding the subject matter covered by this Agreement except as specifically set out in writing herein. Any amendments or modifications shall be specified in writing and executed by both Client and Service Provider.

**Acceptance of Terms**

Client acknowledges that the person signing this Agreement on its behalf is duly authorized to do so, and represents and warrants that such person is acting within the scope of his or her authority to fully and unconditionally bind Client with regard to the terms and conditions of this Agreement. The signature of both parties shall evidence acceptance of this Agreement.

CEDARCREEK HEALTH CARE CENTER      THINK ANEW, LLC

By: _Debbie Jones_            By: _____
Name _Debbie Jones_           Don Glidewell
Title _CEO_                   President

Date Signed: _3-10-15_        Date Signed: _7/2/15_

                              Page 5 of 8          Client's Initials _____
                                                   Think Anew LLC _____

---

**Page 6 quadrant:**

**Appendix A**

Covered Services consist of the following remote support services:

*Support Desk*
- Ticket creation
- Troubleshooting level 1 computer issues
- Resetting passwords
- Resetting hung applications
- Troubleshooting and solving printing issues
- Clinical and billing software support (AHT, PCC, etc.) *
- User account setup **
- User account removal and terminations **

*Network (including Wireless) Setup*
- Basic Wireless Access Point troubleshooting
- Basic Networking equipment troubleshooting
- Basic Network and System monitoring
- Network escalation contact to network providers
- Tracking of network/system issues
- Provide point of contact for carrier (AT&T, Windstream, etc.) needs
- Basic Troubleshooting with carriers
- Network security

*Running IT Infrastructure*
- Domain controller setup, configuration, and management
- SQL server setup, configuration, and management
- Terminal services setup, configuration, and management
- Clinical software setup, configuration, and management
- Email setup, configuration, and management

*Management IT Support*
CIO-level input and support is requested based on present and future business strategies of Client

* In certain cases, services may require support only available during regular business hours.
** Approval required from customer management team and may require support only available during regular business hours.

                              Page 6 of 8          Client's Initials _____
                                                   Think Anew LLC _____

---

**Page 7 quadrant:**

**Appendix B**

Any services that are outside the Covered Services as provided in Appendix A are considered as Additional Services. Additional Services include, without limitation, the following:

* Services related to hardware or software replacement, configuration, and/or upgrades, such as laptops, desktop PC's, monitors, batteries, and other peripherals. Service Provider will obtain approval from Client prior to purchasing and replacing any hardware or software.

* All on-site services. Any work that requires a technician on-site at any facility will be billed according to the rates set out below.

Travel costs will be billed for travel to/from Client's facility, based on the hourly rates set out below. Service Provider will obtain approval to incur travel costs from Client prior to sending a technician or representative to a site.

The following hourly rates will apply to all Additional Services performed by Service Provider, in addition to any related expenses incurred in the performance of Additional Services.

| Work Role | Normal Rate | Emergency Rate (Weekends, Holidays, and After Normal Business Hours) |
|---|---|---|
| Associate Engineer | $85.50/hour | $125.00/hour |
| Systems Engineer | $135.00/hour | $200.00/hour |
| Travel Costs (Each Way) | $45.00/hour | $45.00/hour |

                              Page 7 of 8          Client's Initials _____
                                                   Think Anew LLC _____

---

**Page 8 quadrant:**

**Continuing Guaranty for**
**Managed Services Agreement**

As the management company of the above-referenced Client herein, and as an inducement to Service Provider to make and enter into this Managed Services Agreement (the "Agreement") with this Client, the undersigned, on behalf of such Client, fully, absolutely, irrevocably, and unconditionally guarantees [1] the Client's payments of its Fees and any other sums that are payable or may become payable under this Agreement, and [2] the performance of all other obligations the Client may have under this Agreement, all upon the same terms, conditions, and limitations as set out in this Agreement as applicable to Client and without the need for demand or notice to the undersigned, all of which are hereby waived by the undersigned. This Continuing Guaranty shall include and be fully effective as to any subsequent revisions, additions, amendments, or addendums to this Agreement and/or to any exhibit hereto, including without limitation any additional Fees and sums that may result from any additions to or revisions of the Agreement and/or the pricing thereof, whether or not the undersigned executed, had notice of, was otherwise a party to such revision, addition, amendment, or addendum. The undersigned also fully consents to be bound by the Applicable Law and Arbitration provisions of Paragraph 21 hereof.

New Beginnings Care, LLC

By: _Debbie Jones_                Date Signed _9-10-15_
Print Name: _Debbie Jones_        Position: _CEO_

                              Page 8 of 8          Client's Initials _____
                                                   Think Anew LLC _____



# THINKANEW

**EXHIBIT E**

TELECOMMUNICATIONS EQUIPMENT LEASE AND SERVICE AGREEMENT

This Telecommunications Equipment Lease Service Agreement (the "Agreement") is entered into by and between Think Anew, LLC, 7370 Old Canton Road, Madison, Mississippi, 39110, hereinafter referred to as "Lessor," and Abbeville Healthcare & Rehabilitation, LLC, located at 206 Main Street, Abbeville, GA 31001, hereinafter referred to as "Lessee."

1.    Lease of Equipment. Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the personal property (together with all replacement parts, additions, repairs and accessories) described in the Addendum attached hereto as Exhibit A (the "Addendum"), to be utilized at the location described in the Addendum (the "Site"), which equipment shall be referred to herein as the "Leased Equipment." Exhibit A is incorporated herein and made a part of this Agreement by reference.

2.    Term. This Lease is for a term of Sixty (60) months beginning on September 1st, 2013 (the "Initial Term"), expiring August 31, 2018. This Agreement shall automatically renew for subsequent one-year extended terms ("Extended Term") beginning on the day immediately following the expiration of the Initial Term or any Extended Term, unless either party gives the other written notice of its intent not to renew this Agreement at least ninety (90) days prior to the expiration date of the Initial Term or any subsequent Extended Term.

3.    Rentals and Services.

(a)    For said term, or any portion thereof, Lessee shall pay to Lessor rental and service fees (collectively "Fees") for the Leased Equipment in the amounts set forth in Exhibit A (said fee any Leased Equipment that may be added pursuant to Paragraph 24 below), payable in monthly payments, each due and payable on the first day of each month until the termination of this Agreement. All Fees shall be paid at Lessor's place of business or such other place as the Lessor may designate by written notice to the Lessee. All Fees shall be paid without notice or demand and without abatement, deduction, or set-off of any amount whatsoever. The operation and use of the Leased Equipment shall be at the risk of Lessee, and not of Lessor, and the obligation of Lessee to pay Fees hereunder shall be unconditional. In the event that any payment to be made by Lessee shall not be paid within thirty (30) days of the invoice date, Lessor shall pay a delinquency charge to Lessee in an amount equal to one percent (1%) of all payments not overdue per month, and such delinquency charge shall be deemed "additional rent" for all purposes under this Agreement.

---

(3)    Upon execution of this Lease, Lessee shall pay to Lessor a non-refundable fee ("Lease Initiation Fee") in a sum equal to one month's payment of the Fees described in Section 3(a).

(b)    In consideration for the Fees, Lessor agrees to provide the following services to Lessee:

(i)    Installation of the Leased Equipment at the Site(s) designated by Lessee which are reasonably acceptable to the Lessor;

(ii)    Operational assistance and cooperation in connection with the use of the Leased Equipment;

(iii)    Management of Telco Service provider bills;

(iv)    Moves, Adds, and Changes as it pertains to voicemail, phone numbers and connections;

(v)    Coordination of repair and warranty service and

(vi)    Any additional service agreed to in writing by both Lessor and Lessee.

4.    Damage to Leased Equipment. Lessee shall be liable to the Lessor for any loss or damage to any Leased Equipment during the term of this Agreement, including any corrosion thereof. In the event of damage to Leased Equipment which does not constitute total destruction of the entirety of the Leased Equipment, this liability may be discharged by Lessee paying to the Lessor the actual cash replacement value of any unit or units of the Leased Equipment totally destroyed and/or by paying the actual cost of repair to any unit or units which are damaged but are capable of repair, as appropriate, less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage. If the Leased Equipment is totally destroyed in its entirety, the liability of Lessee may be discharged by Lessee paying to the Lessor the actual cash replacement value of the Leased Equipment totally destroyed and all the Fees due thereon, plus all the Fees to become due thereon less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage. Lessee shall not be obligated to undertake, by litigation or otherwise, the collection of any claim against any person for loss or damage of the Leased Equipment.

5.    No Warranties by Lessor as to Leased Equipment. EXCEPT AS SPECIFICALLY CONTAINED IN THIS AGREEMENT, INCLUDING ANY EXHIBITS ATTACHED HERETO, LESSOR, NOT BEING THE MANUFACTURER OF THE LEASED EQUIPMENT, NOR MANUFACTURER'S AGENT FOR THIS PURPOSE, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OR CAPACITY OF THE MATERIAL, EQUIPMENT OR WORKMANSHIP IN THE LEASED EQUIPMENT, AND MAKES NO WARRANTY OR REPRESENTATION THAT THE LEASED

---

EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT. IT BEING AGREED THAT ALL SUCH RISKS REGARDING THE LEASED EQUIPMENT, AS BETWEEN THE LESSOR AND THE LESSEE, ARE TO BE BORNE BY THE LESSEE AT ITS SOLE RISK AND EXPENSE. THE WARRANTIES WAIVED HEREBY BY LESSEE INCLUDE, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. Notwithstanding the foregoing, Lessor does warrant and represent that the Leased Equipment will be installed by Lessor in a proper manner.

No agreement, guaranty, promise, condition, representation or warranty contrary to the foregoing shall be binding; all prior conversations, agreements or representations related hereto and/or to the Leased Equipment are integrated herein, and no modification hereof shall be binding unless in writing (with a specific reference to this provision of the Agreement) signed by Lessor.

If (1) the manufacturer of the Leased Equipment shall fail to comply with its warranty obligations to such an extent that the Leased Equipment is, or becomes, materially unfit for its intended uses, (2) the Lessee has exhausted all attempts required under the manufacturer's warranty to allow the manufacturer an opportunity to cure, and (3) the manufacturer of the Leased Equipment has so materially breached its warranty obligations that the Lessee wishes to have replacement equipment of like kind and quality supplied by the same or a different manufacturer, Lessee shall deliver written notice of such intent to Lessor by certified mail, return receipt requested. Lessor shall have ten (10) days from the date of receipt of such notice to, at Lessor's option, either (a) obtain and install replacement equipment of like kind and quality from the same or a different manufacturer, at no additional cost to Lessee, or (b) declare this Agreement terminated, in which case Lessee shall have no further obligations under this Agreement. Should Lessor so terminate this Agreement, Lessor shall have no liability whatsoever to the Lessee, including, but not limited to, liability for interruption of business or other damages flowing from the unfitness of the Leased Equipment. In the event of any conflict between this paragraph and paragraph 22, "Limitation of Liability," the terms of paragraph 22, "Limitation of Liability" shall control.

6.    Compliance With Laws. Lessee agrees, at its own cost and expense (a) to pay all charges and expenses in connection with the operation of each item of Leased Equipment, (b) to comply with all governmental laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Leased Equipment, and (c) repair as specifically delegated to Lessor in this Agreement, to make all repairs and replacements required to be made to maintain the Leased Equipment in good condition, reasonable wear and tear excepted.

7.    Taxes. During the term of this Agreement, Lessee agrees that, in addition to the Fees provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the Lessee in the Leased Equipment or upon the use or operation thereof, and as additional fees will promptly pay as reimburse the Lessor for all taxes (other than sales taxes paid by Lessee with respect to the purchase of the Leased Equipment), assessments and other governmental charges levied or assessed against and

---

paid by the Lessor on account of its ownership of the Leased Equipment or any part thereof, or the use or operation thereof or the leasing thereof to the Lessee.

8.    Covenants of Lessee. Lessee covenants at all times during this Agreement to provide adequate hardware to allow for the installation and operation of the Leased Equipment.

9.    Title of the Lessor. Title to the Leased Equipment shall at all times remain in the Lessor and Lessor will at all times protect and defend, at its own cost and expense, the title of the Lessor from and against all claims, liens and legal processes of creditors of the Lessee and keep the Leased Equipment free and clear from all such claims, liens and processes. Lessee specifically authorizes Lessor to prepare and deliver any and all filing statements, notices or other documents necessary to perfect its interest in the Leased Equipment. The Leased Equipment is and shall remain personal property, and shall not become or be considered as a fixture. Upon the expiration or termination of this Agreement for any reason, the Lessor at Lessee's sole expense shall return the Leased Equipment unencumbered to Lessor at Lessee's place of business, or to such other place as Lessor and Lessee agree upon, and in the same condition as when received by Lessor, reasonable wear and tear resulting from use thereof alone excepted.

10.    Possession, Place of Use, Changes in Location. So long as Lessee shall not be in default under this Agreement, it shall be entitled to the possession and use of the Leased Equipment in accordance with the terms of this Agreement. The Leased Equipment shall be used in the conduct of the lawful business of the Lessee, shall be kept at the Site where it was installed and shall not be permanently removed from such location without the prior written consent of the Lessor. The Lessee shall not, without Lessor's express prior written consent, part with possession or control of the Leased Equipment or attempt to sell, pledge, mortgage or otherwise encumber any of the Leased Equipment or attempt to purport to sell, pledge, mortgage, assign, transfer or otherwise dispose of or encumber any interest under this Agreement.

11.    Performance of Obligations.

(a)    If Lessee shall fail duly and promptly to perform any of its obligations under the provisions of this Agreement to be performed by the Lessee, the Lessor may, at its option, immediately or at any time thereafter perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense or liability incurred by Lessee in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessee to the Lessor, shall be payable by the Lessor upon demand as additional Fees.

(b)    If the Lessor shall fail duly and promptly to perform any of its obligations under the provisions of this Lease to be performed by the Lessor, the Lessee may, at its option, immediately or at any time thereafter perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense or liability incurred by Lessor in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessor to the Lessee, shall be payable by the Lessor upon demand.

12. Right of Inspection. Lessor shall have the right from time to time during reasonable business hours to enter upon the Lessee's premises or elsewhere for the purpose of confirming the existence, condition and maintenance of the Leased Equipment and for the provision of the services contemplated by this Agreement.

13. Default by Lessee. There shall be deemed to be a breach of this Agreement by Lessee if:

(a) Lessee shall default in the payment of any amount due hereunder and such default shall continue for a period of thirty (30) days; and/or

(b) Lessee shall default in the performance of any other covenant, condition or agreement herein and such default shall continued uncured for thirty (30) days after written notice thereof to Lessee by Lessor; and/or

(c) Lessee ceases doing business as a going concern, or becomes insolvent, or if a petition is filed by or against Lessee under the Bankruptcy Code or any amendment thereto; and/or

(d) Lessee removes, sells, transfers, encumbers, subfets, or parts with possession of the Leased Equipment or any part thereof, or authorizes, purports to do, or attempts to do any of the foregoing.

In the event of a breach of this Agreement by Lessee as herein defined in (a) through (d) above, Lessor, at its option, shall have the right to exercise any one or more of the following remedies:

(a) Lessor may demand forthwith that the Leased Equipment be delivered to Lessor at Lessee's expense at such place as Lessor shall designate; and/or

(b) Lessor and/or its agents may, without notice or liability or legal process, enter into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where the Leased Equipment may be located or is believed by the Lessor to be located, and repossess all or any part of the Leased Equipment, disconnecting and separating all thereof from any other property, Lessee hereby expressly waiving all further rights to possession; and/or

(c) Lessor may cause the provision of any and all services contemplated by Paragraph 3(s) of this Agreement; and/or

(d) Lessor may immediately terminate this Agreement and/or declare all sums due and to become due hereunder immediately due and payable, without further obligation under this Agreement; and/or

(e) Lessor may recover immediately as and for liquidated damages for the breach of this Agreement, and not as a penalty, any and all unpaid Fees that accrued on or before the breach of this Agreement by Lessee, plus an amount equal to the aggregate unpaid Fees remaining hereunder for the unexpired term of this Agreement. The provisions of this Subparagraph (e) shall be in addition to, and without prejudice to, any other claims for damages or remedies to which Lessor may be entitled; and/or

(f) Lessor may proceed by appropriate legal proceedings, as described in Paragraph 21, to enforce performance by the Lessee of any and all of the applicable covenants of this Agreement and/or seek any other remedy herein provided or that may be available at law or in equity.

Should any legal proceedings be instituted by Lessor to recover any sums that are to become due to Lessor hereunder and/or for possession of any or all of the Leased Equipment and/or for any other relief, the non-prevailing party in such legal proceedings shall pay the reasonable attorneys' fees of the prevailing party.

14. Default by Lessor. There shall be deemed to be a breach of this Agreement by Lessor if:

(a) Lessor shall substantially default in the performance of any material covenants herein and such default shall continued uncured for thirty (30) days after written notice thereof to Lessor by Lessee; or

(b) Lessor ceases doing business as a going concern, becomes insolvent, or if a petition is filed by or against Lessor under the Bankruptcy Code or any amendment thereto.

In the event of a breach of this Agreement by Lessor as herein defined in (a) through (b) above, Lessee, at its option, may terminate this Agreement and immediately return all Leased Equipment to Lessor, without any further obligation to the Lessor.

15. Indemnity. Lessee shall indemnify and save Lessor harmless from any and all liability, loss, damage, expense, causes of action, suits, claims, or judgments arising from injury to person or property resulting from or based upon the actual or alleged use or operation of any or all of the Leased Equipment, except for any such claim based solely upon the gross negligence or intentional wrongdoing of the Lessor; and shall, at its own cost and expense, defend any and all suits which may be brought against Lessee, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay, and discharge any and all judgments and fines that may be recovered against Lessee in any such action or actions, provided, however, that Lessor shall give Lessee written notice of any such claim or demand. Lessor shall indemnify and save Lessee harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from injury to person or property

resulting from or based upon the installation or maintenance of the Leased Equipment, or the gross negligence or intentional wrongdoing of the Lessor; and shall, at its own cost and expense, defend any and all such suits which may be brought against Lessee, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against Lessee in any such action or actions, provided, however, that Lessee shall give Lessor written notice of any such claim or demand.

16. Assignment. This Agreement and all rights of Lessor hereunder shall be assignable by Lessor without Lessee's consent, but Lessor shall not be obligated to any assignee of the Lessor except after written notice of such assignment from the Lessor. Without the prior written consent of Lessor, the Lessee shall not assign this Agreement or its interest hereunder nor enter into any sublease with respect to the Leased Equipment covered hereby.

17. Further Assurance. Either party shall execute and deliver the other party, upon request, such instruments and assurances as such requesting party deems necessary or advisable for the confirmation or perfection of this Agreement and the parties' respective rights hereunder.

18. Notices. All notices relating hereto shall be delivered in person to an officer of the Lessee or Lessor, or shall be mailed by certified mail to Lessor or Lessee at its respective address set forth below or at any later address last known to the sender.

If to Lessor:    Think Anew, LLC
                 Attn: Don Glidewell
                 P.O. Box 669
                 Madison, MS 39130

If to Lessee:    New Beginnings Care, LLC
                 Attn: Legal Department
                 4704 Hixson Pike
                 Hixson, TN 37343

19. Remedies, Waivers. No remedy hereunder shall be exclusive of any other remedy herein or of any other remedy otherwise available at law or in equity, but each shall be cumulative and in addition to every other remedy. A waiver of a default or failure to strictly construe or enforce the terms hereof shall not be a waiver of any other or a subsequent default or a waiver of the right to demand strict compliance.

20. Irrevocability. Except in the event of a default by Lessor which is not timely cured in accordance with the terms of this Agreement, this Agreement is irrevocable for the full term hereof (including Extended Terms, if any) as set forth in Paragraph 2 hereof and for the aggregate Fees herein reserved in Paragraph 3, and the Fees shall not abate by reason of termination of Lessor's right of possession and/or the taking of possession by the Lessor or for

any other reason. Delinquent installments of Fees shall bear interest at the highest lawful contract rate or one percent (1%) per month, whichever be the lesser.

21. Applicable Law; Arbitration. This Agreement shall be construed and interpreted under the laws of the State of Mississippi, regardless of any applicable choice of laws provision. ANY DISPUTE UNDER, OR ARISING OUT OF THE SUBJECT MATTER OF, THIS AGREEMENT WHICH CANNOT BE RESOLVED BY THE PARTIES SHALL BE SUBMITTED TO BINDING ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION UNLESS THE PARTIES MUTUALLY AGREE OTHERWISE. THE ARBITRATION SHALL BE CONDUCTED IN MADISON COUNTY, MISSISSIPPI, BEFORE AN ARBITRATOR TO BE MUTUALLY AGREED UPON BY THE PARTIES HERETO. NO PARTY TO ANY DISPUTE SHALL BE ENTITLED TO ANY PUNITIVE DAMAGES. THE ARBITRATOR'S FEES SHALL BE SHARED EQUALLY BY THE PARTIES. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND WILL BE ENTITLED TO ENFORCEMENT IN ALL JURISDICTIONS, INCLUDING WITHOUT LIMITATION THE COURTS OF THE STATE WHERE THE LESSEE IS LOCATED. To the extent not covered by the mandatory arbitration provision above, all controversies hereunder shall be adjudicated in the state courts located in, or in the federal courts whose jurisdiction covers, Madison County, Mississippi.

22. Limitation of Liability. If Lessee is found to be in material breach of this Agreement, Lessee's sole remedy against Lessor shall be the termination of this Agreement and cessation of Lessee's future liability for any of the Fees specified in paragraph 3. Lessor shall have no other liability whatsoever to the Lessee, including, but not limited to, liability for interruption of business or other consequential damages. If any other provision of this Agreement is found to be in conflict with this paragraph, the provisions of this paragraph shall control.

23. Entire Agreement. This instrument constitutes the entire agreement between Lessor and Lessee; and it shall not be amended, altered or changed except by a written Agreement signed by the parties hereto.

24. Amendments to Exhibit A. This Agreement may be amended only by written agreement signed by both parties, as set out above; provided, however, from time to time during any term of this Agreement, Lessor and Lessee may mutually consent in writing (via e-mail or fax request or confirmation, or similar writing) to any addition to or revision of the list of and/or pricing of the Leased Equipment contained in Exhibit A. Lessor and Lessee may also mutually consent in writing to revise, or add an additional location to, the Site listed on Exhibit A. All Leased Equipment attributable to such revised or additional Site shall be utilized at that location, in accordance with the other provisions of this Agreement.

Any such addition(s) or revision(s) as referenced in this Paragraph will be reflected in subsequent billing statements submitted to Lessee and will be deemed fully consented to and accepted by Lessee unless Lessee is notified otherwise in writing within 30 days of the date of the initial billing in which such addition or revision is reflected. In all cases, the addition or

revision shall be deemed fully accepted once any Fees are paid by Lessee in connection with same. All such additions or revisions shall be deemed an incorporated into and made a part of this Agreement and Exhibit A without the need for further reference thereto, and will be subject to all terms and conditions of this Agreement and Exhibit A as if included therein.

25.    Severability; Captions.    If any clause or provision of this Agreement is determined to be illegal, invalid, or unenforceable by any rule of law, public policy consideration, or court of competent jurisdiction, then it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby. It is also the intention of the parties to this Agreement that with respect to such clause or provision that is illegal, invalid, or unenforceable, that such clause be construed and enforced to the fullest extent possible to reflect the parties' intent and to avoid such illegality, invalidity, or unenforceability. The caption of each paragraph hereof is added as a matter of convenience only and shall be considered to be of no effect in the construction of any provision of this Agreement.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Agreement to be executed by their duly authorized representatives.

THINK ANEW, LLC                              ABBEVILLE HEALTHCARE & REHABILITATION

By: _____  12/6/17       By: Martha C. Abercrombie 12/3/13
    Date Signed                           Date Signed
President

                                    Print Name: Martha C. Abercrombie
                                    Position: VP of Business Development

Lessor's Initials _____  Lessee's Initials _____                    Page 19

Continuing Guaranty for
Telecommunications Equipment Lease and Service Agreement

As the management company of the above-referenced Lessee herein, and as an inducement to Lessor to make and enter into this Telecommunications Equipment Lease and Service Agreement (the "Agreement") with this Lessee, the undersigned, on behalf of such Lessee, fully, absolutely, irrevocably, and unconditionally guarantees (1) the Lessee's payments of its Fees and any other sums that are payable or may become payable under this Agreement, and (2) the performance of all other obligations the Lessee may have under this Agreement, all upon the same terms, conditions, and limitations as set out in this Agreement, as applicable to Lessee and without the need for demand or notice to the undersigned, all of which are hereby waived by the undersigned. This Continuing Guaranty shall include but be fully effective as to any subsequent revisions, additions, amendments, or addendums to this Agreement and/or to any Exhibit hereto, including without limitation any additional Fees and sums that may result from any additions to or revisions of the "Leased Equipment" listed in Exhibit A of the Agreement and/or the pricing thereof, whether or not the undersigned consented, had notice of, was otherwise a party to such revision, addition, amendment, or addendum. The undersigned also fully consents to be bound by the Applicable Law and Arbitration provisions of Paragraph 21 hereof.

NEW BEGINNINGS CARE, LLC

By: Martha C. Abercrombie 12/3/13
                Date Signed

Print Name: Martha C. Abercrombie    Position: VP of Business Development

Lessor's Initials _____  Lessee's Initials _____                    Page 11

EXHIBIT A

Abbeville Healthcare & Rehabilitation, LLC
Effective Date of Equipment Lease and Service Agreement: September 1, 2013

SITE:
Abbeville Healthcare & Rehabilitation, LLC
206 Main Street
Abbeville, GA 31001

LEASED EQUIPMENT and FEES

| QTY | Item Description | Unit Price/Month | Total Monthly Fees |
|---|---|---|---|
| 1 | IP PBX | $250.00 | $250.00 |
| 1 | Managed POE Switch | Waived | |
| 4 | Analogue Connection | Waived | |
| 23 | Cisco Phone 7931 | $40.00 | $920.00 |
| 1 | Cisco Phone 7942 | $40.00 | $40.00 |
| 1 | Cisco Phone 7925 | $70.00 | $140.00 |
| | | Monthly Total Fees | $1,350.00 |

Lessor's Initials _____  Lessee's Initials _____                    Page 11

EXHIBIT
F



THINKANEW

TELECOMMUNICATIONS EQUIPMENT LEASE AND SERVICE AGREEMENT

This Telecommunications Equipment Lease and Service Agreement (the "Agreement") is entered into by and between Think Anew, LLC, 7570 Old Canton Road, Madison, Mississippi, 39110, hereinafter referred to as "Lessor," and Brookside Healthcare & Rehabilitation, LLC, located at 800 Brookside Drive, Little Rock, AR 72205, hereinafter referred to as "Lessee."

1.    Lease of Equipment.    Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the personal property (together with all replacement parts, additions, repairs and accessories) described in the Addendum attached hereto as Exhibit A (the "Addendum"), to be utilized at the location described in the Addendum (the "Site"), which equipment shall be referred to herein as the "Leased Equipment." Exhibit A is incorporated herein and made a part of this Agreement by reference.

2.    Term.    This Lease is for a term of Sixty (60) months beginning on September 1st, 2013 (the "Initial Term"), expiring August 31, 2018.    This Agreement shall automatically renew for subsequent one-year extended terms ("Extended Terms") beginning on the day immediately following the expiration of the Initial Term or any Extended Term, unless either party gives the other written notice of its intent not to renew this Agreement at least ninety (90) days prior to the expiration date of the Initial Term or any subsequent Extended Term.

3.    Rentals and Services.

        (a)    For each term, or any portion thereof, Lessee shall pay to Lessor rental and service fees (collectively "Fees") for the Leased Equipment in the amounts set forth in Exhibit A (and for any Leased Equipment that may be added pursuant to Paragraph 24 below), payable in monthly payments, each due and payable on the first day of each month until the termination of this Agreement. All Fees shall be paid at Lessor's place of business or such other place as the Lessor may designate by written notice to the Lessee. All Fees shall be paid without notice or demand and without abatement, deduction, or set-off of any amount whatsoever. The operation and use of the Leased Equipment shall be at the risk of Lessee, and not of Lessor, and the obligation of Lessee to pay Fees hereunder shall be unconditional. In the event that any payment to be made by Lessee shall not be paid within thirty (30) days of the invoice date, Lessee shall pay a delinquency charge to Lessor in an amount equal to one percent (1%) of all payments so overdue per month, and such delinquency charge shall be deemed "additional rent" for all purposes under this Agreement.

Lessor's Initials _____  Lessee's Initials _____                    Page 11

(b)   Upon execution of this lease, Lessee shall pay to Lessor a non-refundable fee ("Lease Initiation Fee") in a sum equal to one month's payment of the Fees described in Section 3(a).

(c)   In consideration for the Fees, Lessor agrees to provide the following services to Lessee:

(i)   Installation of the Leased Equipment at the Site(s) designated by Lessee which are reasonably acceptable to the Lessor;

(ii)   Operational assistance and expertise in connection with the use of the Leased Equipment;

(iii)   Management of Telco Server provider bills;

(iv)   Moves, Adds, and Changes as it pertains to voicemail, phone numbers and connections;

(v)   Coordination of repair and warranty service and

(vi)   Any additional service agreed to in writing by both Lessor and Lessee.

4.   Damage to Leased Equipment.   Lessor shall be liable to the Lessee for any loss or damage to any Leased Equipment during the term of this Agreement, including any extensions thereof.   In the event of damage to a Leased Equipment which does not constitute total destruction of the entirety of the Leased Equipment, this liability may be discharged by Lessor paying to the Lessee the actual cash replacement value of any unit or units of the Leased Equipment totally destroyed and/or by paying the actual cost of repair to any unit or units which are damaged but are capable of repair, as appropriate, less the net interest of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage.   If the Leased Equipment is totally destroyed in its entirety, the liability of the Lessor may be discharged by Lessor paying to the Lessee the actual cash replacement value of the Leased Equipment totally destroyed and all the Fees due thereto, plus all the Fees to become due thereon less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage.   Lessor shall not be obligated to undertake, by litigation or otherwise, the collection of any claim against any person for loss or damage of the Leased Equipment.

5.   No Warranties by Lessor as to Leased Equipment.   EXCEPT AS SPECIFICALLY CONTAINED IN THIS AGREEMENT, INCLUDING ANY EXHIBITS ATTACHED HERETO, LESSOR, NOT BEING THE MANUFACTURER OF THE LEASED EQUIPMENT; NOR MANUFACTURER'S AGENT FOR THIS PURPOSE, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OR CAPACITY OF THE MATERIAL, EQUIPMENT OR WORKMANSHIP IN THE LEASED EQUIPMENT, AND MAKES NO WARRANTY OR REPRESENTATION THAT THE LEASED

Lessee's Initials _____   Lessor's Initials _____   Page | 2

EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT, IT BEING AGREED THAT ALL SUCH RISKS REGARDING THE LEASED EQUIPMENT, AS BETWEEN THE LESSOR AND THE LESSEE, ARE TO BE BORNE BY THE LESSEE AT ITS SOLE RISK AND EXPENSE. THE WARRANTIES WAIVED HEREBY BY LESSEE INCLUDE, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. Notwithstanding the foregoing, Lessor does warrant and represent that the Leased Equipment will be installed by Lessor in a proper manner.

No agreement, guaranty, promise, condition, representation or warranty contrary to the foregoing shall be binding; all prior conversations, agreements or representations related hereto and/or to the Leased Equipment are integrated herein, and no modification hereof shall be binding unless in writing (with a specific reference to this provision of the Agreement,) signed by Lessee.

If (1) the manufacturer of the Leased Equipment shall fail to comply with its warranty obligation to such an extent that the Leased Equipment is, or becomes, materially unfit for its intended uses, (2) the Lessor has exhausted all attempts required under the manufacturer's warranty to allow the manufacturer an opportunity to cure, and (3) the manufacturer of the Leased Equipment has so materially breached its warranty obligations that the Lessee wishes to have replacement equipment of like kind and quality supplied by the same or a different manufacturer, Lessee shall deliver written notice of such intent to Lessor by certified mail, return receipt requested. Lessor shall have ten (10) days from the date of receipt of such notice to, at Lessor's option, either (a) obtain and install replacement equipment of like kind and quality from the same or a different manufacturer, at no additional cost to Lessee, or (b) declare this Agreement terminated, in which case Lessee shall have no further obligations under this Agreement. Should Lessee so terminate this Agreement, Lessor shall have no liability whatsoever to the Lessee, including, but not limited to, liability for interruption of business or other damages flowing from the unfitness of the Leased Equipment. In the event of any conflict between this paragraph and paragraph 22, "Limitation of Liability," the terms of paragraph 22, "Limitation of Liability" shall control.

6.   Compliance With Laws.   Lessee agrees, at its own cost and expense (a) to pay all charges and expenses in connection with the operation of each item of Leased Equipment, (b) to comply with all governmental laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Leased Equipment, and (c) except as specifically delegated to Lessor in this Agreement, to make all repairs and replacements required to be made to maintain the Leased Equipment in good condition, reasonable wear and tear excepted.

7.   Taxes.   During the term of this Agreement, Lessee agrees that, in addition to the Fees provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the Lessee in the Leased Equipment or upon the use or operation thereof, and an additional fees will promptly pay or reimburse the Lessor for all taxes (other than sales taxes paid by Lessor with respect to its purchase of the Leased Equipment), assessments and other governmental charges levied or assessed against and

Lessee's Initials _____   Lessor's Initials _____   Page | 3

paid by the Lessor on account of its ownership of the Leased Equipment or any part thereof, or the use or operation thereof or the leasing thereof to the Lessee.

8.   Covenants of Lessor.   Lessor covenants in this Agreement to provide adequate hardware to allow for the installation and operation of the Leased Equipment.

9.   Title of the Lessor.   Title to the Leased Equipment shall at all times remain in the Lessor and Lessee will at all times protect and defend, at its own cost and expense, the title of the Lessor from and against all claims, liens and legal processes of creditors of the Lessee and keep all Leased Equipment free and clear from all such claims, liens and processes. Lessee specifically authorizes Lessor to prepare and deliver any and all filing statements, notices or other documents necessary to perfect its interest in the Leased Equipment. The Leased Equipment is and shall remain personal property, and shall not become or be considered as a fixture. Upon the expiration or termination of this Agreement for any reason, the Lessor at Lessee's sole expense shall return the Leased Equipment unencumbered to Lessor at Lessor's place of business, or to such other place as Lessor and Lessee agree upon, and in the same condition as when received by Lessee, reasonable wear and tear resulting from use thereof alone excepted.

10.   Possession, Place of Use, Changes in Location.   So long as Lessee shall not be in default under this Agreement, it shall be entitled to the possession and use of the Leased Equipment in accordance with the terms of this Agreement. The Leased Equipment shall be used in the conduct of the lawful business of the Lessee, shall be kept at the Site where it was installed and shall not be permanently removed from such location without the prior written consent of the Lessee. The Lessee shall not, without Lessor's express prior written consent, part with possession or control of the Leased Equipment or attempt to sell, pledge, mortgage or otherwise encumber any of the Leased Equipment or attempt to transfer to sell, pledge, assign, transfer or otherwise dispose of or encumber any interest under this Agreement.

11.   Performance of Obligations.

(a)   If Lessee shall fail duly and promptly to perform any of its obligations under the provisions of this Agreement to be performed by the Lessee, the Lessor may, at its option, immediately or at any time thereafter perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense or liability incurred by Lessee in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessee to the Lessor, shall be payable by the Lessee upon demand as additional Fees.

(b)   If the Lessor shall fail duly and promptly to perform any of its obligations under the provisions of this Lease to be performed by the Lessor, the Lessee may, at its option, immediately or at any time thereafter perform the same for the account of Lessor without thereby waiving such default, and any amount paid or expense or liability incurred by Lessor in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessor to the Lessee, shall be payable by the Lessor upon demand.

Lessor's Initials _____   Lessee's Initials _____   Page | 4

12.   Right of Inspection.   Lessor shall have the right from time to time during reasonable business hours to enter upon the Lessee's premises or elsewhere for the purpose of confirming the existence, condition and maintenance of the Leased Equipment and for the provision of the services contemplated by this Agreement.

13.   Default by Lessee.   There shall be deemed to be a default in this Agreement by Lessee if:

(a)   Lessee shall default in the payment of any amount due hereunder and such default shall continue for a period of thirty (30) days; and/or

(b)   Lessee shall default in the performance of any other covenant, condition or agreement herein and such default shall continued unpaid for thirty (30) days after written notice thereof to Lessee by Lessor; and/or

(c)   Lessee ceases doing business as a going concern, or becomes insolvent, or if a petition is filed by or against Lessee under the Bankruptcy Code or any amendment thereto; and/or

(d)   Lessee removes, sells, transfers, encumbers, sublets, or parts with possession of the Leased Equipment or any part thereof, or authorizes, purports to do, or attempts to do any of the foregoing.

In the event of a breach of this Agreement by Lessee as herein defined in (a) through (d) above, Lessor, at its option, shall have the right to exercise any one or more of the following remedies:

(a)   Lessor may demand forthwith that the Leased Equipment be delivered to Lessor at Lessee's expense at such place as Lessor shall designate; and/or

(b)   Lessor and/or its agents may, without notice or liability or legal process, enter into any premises of or under control or jurisdiction of the Lessee or any agent of Lessee where the Leased Equipment may be located or is believed by the Lessee to be located, and repossess all or any part of the Leased Equipment, disconnecting and separating all thereof from any other property, Lessee hereby expressly waiving all further rights to possession; and/or

(c)   Lessor may cause the provision of any and all services contemplated by Paragraph 3(c) of this Agreement; and/or

(d)   Lessor may immediately terminate this Agreement and/or declare all sums due and to become due hereunder immediately due and payable, without further obligation under this Agreement; and/or

Lessor's Initials _____   Lessee's Initials _____   Page | 5

## Top Left

(e) Lessor may recover immediately as and for liquidated damages for the breach of this Agreement, and not as a penalty, any and all unpaid Fees that accrued on or before the breach of this Agreement by Lessee, plus an amount equal to the aggregate unpaid Fees remaining hereunder for the unexpired term of this Agreement. The provisions of this Subparagraph (e) shall be in addition to, and without prejudice to, any other claims for damages or remedies to which Lessor may be entitled; and/or

(f) Lessor may proceed by appropriate legal proceedings, as described in Paragraph 21, to enforce performance by the Lessee of any and all of the applicable covenants of this Agreement and/or seek any other remedy herein provided or that may be available at law or in equity.

Should any legal proceedings be instituted by Lessor to recover any sums due or to become due to Lessor hereunder and/or for possession of any or all of the Leased Equipment and/or for any other relief, the non-prevailing party in such legal proceedings shall pay the reasonable attorneys' fees of the prevailing party.

14.    Default by Lessee.    There shall be deemed to be a breach of this Agreement by Lessee if:

(a) Lessee shall substantially default in the performance of any material covenants herein and such default shall continued unsured for thirty (30) days after written notice thereof to Lessor by Lessee; or

(b) Lessee ceases doing business as a going concern, becomes insolvent, or if a petition is filed by or against Lessor under the Bankruptcy Code or any amendment thereto.

In the event of a breach of this Agreement by Lessee as herein defined in (a) through (b) above, Lessor, at its option, may terminate this Agreement and immediately retain all Leased Equipment and, without any further obligation to the Lessor.

15.    Indemnity.    Lessee shall indemnify and save Lessor harmless from any and all liability, loss, damage, expense, causes of action, suits, claims, or judgments arising from injury to person or property resulting from or based upon the actual or alleged use or operation of any or all of the Leased Equipment, except for any such claim based solely upon the gross negligence or intentional wrongdoing of the Lessor; and shall, at its own cost and expense, defend any and all such suits which may be brought against Lessor, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against Lessor in any such action or actions, provided, however, that Lessor shall give Lessee written notice of any such claim or demand. Lessee shall indemnify and save Lessor harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgments arising from injury to person or property

Lessee's Initials [handwritten]    Lessor's Initials [handwritten]    Page 6

## Top Right

resulting from or based upon the installation or maintenance of the Leased Equipment, or the gross negligence or intentional wrongdoing of the Lessee; and shall, at its own cost and expense, defend any and all such suits which may be brought against Lessee, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against Lessee in any such action or actions, provided, however, that Lessee shall give Lessor prompt written notice of any such claim or demand.

16.    Assignment.    This Agreement and all rights of Lessor hereunder shall be assignable by Lessor without Lessee's consent, but Lessee shall not be obligated to any assignee of the Lessor except after exiting notice of such assignment from the Lessor. Without the prior written consent of Lessor, the Lessee shall not assign this Agreement or its interest hereunder nor enter into any subleases with respect to the Leased Equipment covered hereby.

17.    Further Assurances.    Either party shall execute and deliver the other party, upon request, such instruments and assurances as such requesting party deems necessary or advisable for the confirmation or perfection of this Agreement and the parties' respective rights hereunder.

18.    Notices.    All notices relating hereto shall be delivered in person to an officer of the Lessor or Lessee, or shall be mailed by certified mail to Lessor or Lessee at its respective address set forth below or at any later address last known to the sender.

If to Lessor:

    Think Anew, LLC
    Attn: Don Glidewell
    P.O. Box 669
    Madison, MS 39130

If to Lessee:

    New Beginnings Care, LLC
    Attn: Legal Department
    4704 Hixson Pike
    Hixson, TN 37343

19.    Remedies, Waivers.    No remedy hereunder shall be exclusive of any other remedy herein or of any other remedy otherwise available at law or in equity, but each shall be cumulative and in addition to every other remedy. A waiver of a default or failure to strictly construe or enforce the terms hereof shall not be a waiver of any other or a subsequent default or a waiver of the right to demand strict compliance.

20.    Irrevocability.    Except in the event of a default by Lessor which is not timely cured in accordance with the terms of this Agreement, this Agreement is irrevocable for the full term hereof (including Extended Terms, if any) as set forth in Paragraph 2 hereof and for the aggregate Fees herein reserved in Paragraph 3, and the Fees shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or for

Lessee's Initials [handwritten]    Lessor's Initials [handwritten]    Page 7

## Bottom Left

any other reason. Delinquent installments of Fees shall bear interest at the highest lawful contract rate or one percent (1%) per month, whichever be the lesser.

21.    Applicable Law, Arbitration.    This Agreement shall be construed and interpreted under the laws of the State of Mississippi, regardless of any applicable choice of laws principles. ANY DISPUTE UNDER, OR ARISING OUT OF THIS AGREEMENT, OR THE SUBJECT MATTER OF THIS AGREEMENT WHICH CANNOT BE RESOLVED BY THE PARTIES SHALL BE SUBMITTED TO BINDING ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION UNLESS THE PARTIES MUTUALLY AGREE OTHERWISE. THE ARBITRATION SHALL BE CONDUCTED IN MADISON COUNTY, MISSISSIPPI, BEFORE AN ARBITRATOR TO BE MUTUALLY AGREED UPON BY THE PARTIES HERETO. NO PARTY TO ANY DISPUTE SHALL BE ENTITLED TO ANY PUNITIVE DAMAGES. THE ARBITRATOR'S FEES SHALL BE SHARED EQUALLY BY THE PARTIES. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND MAY BE ENTITLED TO ENFORCEMENT IN ALL JURISDICTIONS, INCLUDING WITHOUT LIMITATION THE COURTS OF THE STATE WHERE THE LESSEE IS LOCATED. To the extent not covered by the mandatory arbitration provision above, all controversies hereunder shall be adjudicated only in the state courts located in, or in the federal courts whose jurisdiction covers, Madison County, Mississippi.

22.    Limitation of Liability.    If Lessee is found to be in material breach of this Agreement, Lessee's sole remedy against Lessor shall be the termination of this Agreement and cessation of Lessee's future liability for any of the Fees specified in paragraph 3. Lessor shall have no other liability whatsoever to the Lessee, including, but not limited to, liability for interruption of business or other consequential damages. If any other provision of this Agreement is found to be in conflict with this paragraph, the provisions of this paragraph shall control.

23.    Entire Agreement.    This Agreement constitutes the entire agreement between Lessor and Lessee, and it shall not be amended, altered or changed except by a written agreement signed by the parties hereto.

24.    Amendments to Exhibit A.    This Agreement may be amended only by written agreement signed by both parties, as set out above; provided, however, from time to time during any term of this Agreement, Lessor and Lessee may mutually consent in writing (via e-mail or fax request or confirmation, or similar writing) to any addition to or revision of the list of and/or pricing of the Leased Equipment contained in Exhibit A. Lessor and Lessee may also mutually consent in writing to revise, or add an additional location to, the Site listed on Exhibit A. All Leased Equipment attributable to such revised or additional Site shall be utilized at that location, in accordance with other provisions of this Agreement.

Any such addition(s) or revision(s) as referenced in this Paragraph will be reflected in subsequent billing statements submitted to Lessee and will be deemed fully consented to and accepted by Lessee unless Lessee is notified otherwise in writing within 30 days of the date of the initial billing in which such addition or revision is reflected. In all cases, the addition or

Lessee's Initials [handwritten]    Lessor's Initials [handwritten]    Page 8

## Bottom Right

revision shall be deemed fully accepted once any Fees are paid by Lessee in connection with same. All such additions or revisions shall be deemed so incorporated into and made a part of this Agreement and Exhibit A without the need for further references thereto, and will be subject to all terms and conditions of this Agreement and Exhibit A as if included therein.

25.    Severability, Captions.    If any clause or provision of this Agreement is determined to be illegal, invalid, or unenforceable by any rule of law, public policy consideration, or court of competent jurisdiction, then it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby. It is also the intention of the parties to this Agreement that such clause or provision that is illegal, invalid, or unenforceable, but such clause be construed and enforced to the fullest extent possible to reflect the parties' intent and to avoid such illegality, invalidity, or unenforceability. The caption of each paragraph hereof is added as a matter of convenience only and shall be considered to be of no effect in the construction of any provision of this Agreement.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Agreement to be executed by their duly authorized representatives.

THINK ANEW, LLC                     BROOKSIDE HEALTHCARE & REHABILITATION

By: [signature]                      By: [handwritten] Martha Abercrombie Nov 25 2015
Date Signed  12/2/17                 Date Signed

[handwritten] President              Print Name: Martha C. Abercrombie
                                     Position: VP of Business Development

Lessee's Initials [handwritten]    Lessor's Initials [handwritten]    Page 9

### Continuing Guaranty for
### Telecommunications Equipment Lease and Service Agreement

As the management company of the above-referenced Lessee herein, and as an inducement to Lessor to make and enter into this Telecommunications Equipment Lease and Service Agreement (the "Agreement") with this Lessee, the undersigned, on behalf of such Lessee, fully, absolutely, irrevocably, and unconditionally guarantees (1) the Lessee's payments of its Fees and any other sums that are payable or may become payable under this Agreement, and (2) the performance of all other obligations the Lessee may have under this Agreement, all upon the same terms, conditions, and limitations as set out in this Agreement as applicable to Lessee and without the need for demand or notice to the undersigned, all of which are hereby waived by the undersigned. This Continuing Guaranty shall include and be fully effective as to any subsequent revisions, additions, amendments, or addendums to this Agreement and/or to any Exhibit hereto, including without limitation any additional Fees and terms that may result from any additions to or revisions of the "Leased Equipment" listed in Exhibit A of the Agreement and/or the pricing thereof, whether or not the undersigned executed, had notice of, was otherwise a party to such revision, addition, amendment, or addendum. The undersigned also fully consents to be bound by the Applicable Law and Arbitration provisions of Paragraph 21 hereof.

NEW BEGINNINGS CARE, LLC

By: Martha C. Abercrombie    Nov. 25, 2013
    Date Signed

Print Name Martha C. Abercrombie    Position: VP of Business Development

---

### EXHIBIT A

Brookside Healthcare & Rehabilitation, LLC
Effective Date of Equipment Lease and Service Agreement:  September 1, 2013

SITE:
Brookside Healthcare & Rehabilitation, LLC
800 Brookside Drive
Little Rock, AR 72205

LEASED EQUIPMENT and FEES:

| QTY | Item Description | Unit Price/Month | Total Monthly Fees |
|---|---|---|---|
| 1 | IP PBX | $250.00 | $250.00 |
| 1 | Managed POE Switch | Waived | |
| 4 | Analogue Connection | Waived | |
| 2 | Cisco Phone 7925 Chargers | Waived | |
| 22 | Cisco Phone 7931 | $40.00 | $880.00 |
| 2 | Cisco Phone 7925 | $70.00 | $140.00 |
| | | Monthly Total Fees | $1,270.00 |

---



**EXHIBIT G**

THINKANEW

TELECOMMUNICATIONS EQUIPMENT LEASE AND SERVICE AGREEMENT

This Telecommunications Equipment Lease and Service Agreement (the "Agreement") is entered into by and between Think Anew, LLC, 7570 Old Canton Road, Madison, Mississippi, 39110, hereinafter referred to as "Lessor," and Eastman Healthcare & Rehabilitation, LLC, located at 556 Chester Highway, Eastman, GA 31023, hereinafter referred to as "Lessee."

1.    Lease of Equipment. Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the personal property (together with all replacement parts, additions, repairs and accessories) described in the Addendum attached hereto as Exhibit A (the "Addendum"), to be utilized at the location described in the Addendum (the "Site"), which equipment shall be referred to herein as the "Leased Equipment." Exhibit A is incorporated herein and made a part of this Agreement by reference.

2.    Term. This Lease is for a term of Sixty (60) months beginning on September 1st, 2013 (the "Initial Term"), expiring August 31, 2018. This Agreement shall automatically renew for subsequent one-year extended terms ("Extended Terms") beginning on the day immediately following the expiration of the Initial Term or any Extended Term, unless either party gives the other written notice of its intent not to renew this Agreement at least ninety (90) days prior to the expiration date of the Initial Term or any subsequent Extended Term.

3.    Rentals and Services.

(a)    For said term, or any portion thereof, Lessee shall pay to Lessor rental and service fees (collectively "Fees") for the Leased Equipment in the amounts set forth in Exhibit A (and for any Leased Equipment that may be added pursuant to Paragraph 24 below), payable in monthly payments, each due and payable on the first day of each month until the termination of this Agreement. All Fees shall be paid at Lessor's place of business or such other place as the Lessor may designate by written notice to the Lessee. All Fees shall be paid without notice or demand and without abatement, deduction, or set-off of any amount whatsoever. The operation and use of the Leased Equipment shall be at the risk of Lessee, and not of Lessor, and the obligation of Lessee to pay Fees hereunder shall be unconditional. In the event that any payment to be made by Lessor shall not be paid within thirty (30) days of the invoice date, Lessee shall pay a delinquency charge to Lessor in an amount equal to one percent (1%) of all payments to overdue per month, and such delinquency charge shall be deemed "additional rent" for all purposes under this Agreement.

---

(b)    Upon execution of this Agreement, Lessee shall pay to Lessor a non-refundable fee ("Lease Initiation Fee") in a sum equal to one month's payment of the Fees described in Section 3(a).

(c)    In consideration of the Fees, Lessor agrees to provide the following services to Lessee:

(i)    Installation of the Leased Equipment at the Site(s) designated by Lessee which are reasonably acceptable to the Lessor;

(ii)    Operational assistance and expertise in connection with the use of the Leased Equipment;

(iii)    Management of Telco Service provider bills

(iv)    Moves, Adds, and Changes as it pertains to voicemail, phone numbers and connections;

(v)    Coordination of repair and warranty service and

(vi)    Any additional service agreed to in writing by both Lessor and Lessee.

4.    Leased Equipment. Lessor shall be liable to the Lessor for any loss or damage to any Leased Equipment during the term of this Agreement, including any extensions thereof. In the event of damage to Leased Equipment which does not constitute total destruction of the entirety of the Leased Equipment, this liability may be discharged by Lessee paying to the Lessor the actual cash replacement value of any unit or units of the Leased Equipment totally destroyed and/or by paying the actual cost of repair to any unit or units which are damaged but are capable of repair, as appropriate, less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage. If the Leased Equipment is totally destroyed in its entirety, the liability of the Lessee may be discharged by Lessee paying to the Lessor the actual cash replacement value of the Leased Equipment totally destroyed and all the Fees due thereon, plus all the Fees to become due thereon less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage. Lessor shall not be obligated to undertake, by litigation or otherwise, the collection of any claim against any person for loss or damage of the Leased Equipment.

5.    No Warranties by Lessor as to Leased Equipment. EXCEPT AS SPECIFICALLY CONTAINED IN THIS AGREEMENT, INCLUDING ANY EXHIBITS ATTACHED HERETO, LESSOR, NOT BEING THE MANUFACTURER OF THE LEASED EQUIPMENT, NOR MANUFACTURER'S AGENT FOR THIS PURPOSE, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OR CAPACITY OF THE MATERIAL, EQUIPMENT OR WORKMANSHIP IN THE LEASED EQUIPMENT, AND MAKES NO WARRANTY OR REPRESENTATION THAT THE LEASED

EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT. IT BEING AGREED THAT ALL SUCH RISKS REGARDING THE LEASED EQUIPMENT, AS BETWEEN THE LESSOR AND THE LESSEE, ARE TO BE BORNE BY THE LESSEE AT ITS SOLE RISK AND EXPENSE. THE WARRANTIES WAIVED HEREBY BY LESSEE INCLUDE, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. Notwithstanding the foregoing, Lessee does warrant and represent that the Leased Equipment will be installed by Lessee in a proper manner.

No agreement, guaranty, promise, condition, representation or warranty contrary to the foregoing shall be binding; all prior conversations, agreements or representations related hereto and/or to the Leased Equipment are integrated herein, and no modification hereof shall be binding unless in writing (with a specific reference to this provision of the Agreement) signed by Lessor.

If (1) the manufacturer of the Leased Equipment shall fail to comply with its warranty obligations to such an extent that the Leased Equipment is, or becomes, materially unfit for its intended uses, (2) the Lessee has exhausted all attempts required under the manufacturer's warranty to allow the manufacturer an opportunity to cure, and (3) the manufacturer of the Leased Equipment has so materially breached its warranty obligations that the Lessee wishes to have replacement equipment of like kind and quality supplied by the same or a different manufacturer, Lessor shall deliver written notice of such intent to Lessor by certified mail, return receipt requested. Lessor shall have ten (10) days from the date of receipt of such notice to, at Lessor's option, either (a) obtain and install replacement equipment of like kind and quality from the same or a different manufacturer, or no additional cost to Lessee, or (b) declare this Agreement terminated, in which case Lessee shall have no further obligations under this Agreement. Should Lessor so terminate this Agreement, Lessor shall have no liability whatsoever to the Lessee, including, but not limited to, liability for interruption of business or other damages flowing from the unfitness of the Leased Equipment. In the event of any conflict between this paragraph and paragraph 22, "Limitation of Liability," the terms of paragraph 22, "Limitation of Liability" shall control.

6.    Compliance With Laws. Lessee agrees, at its own cost and expense (a) to pay all charges and expenses in connection with the operation of each item of Leased Equipment, (b) to comply with all governmental laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Leased Equipment, and (c) except as specifically delegated to Lessor in this Agreement, to make all repairs and replacements required to be made to maintain the Leased Equipment in good condition, reasonable wear and tear excepted.

7.    Taxes. During the term of this Agreement, Lessee agrees that, in addition to the Fees provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the Lessee in the Leased Equipment or upon the use or operation thereof, and on additional fees will promptly pay or reimburse the Lessor for all taxes (other than sales taxes) paid by Lessor with respect to its purchase of the Leased Equipment, assessments and other governmental charges levied or assessed against said

Lessor's Initials DRG    Lessee's Initials MCA    Page 13

paid by the Lessor on account of its ownership of the Leased Equipment or any part thereof, or the use or operation thereof or the leasing thereof to the Lessee.

8.    Covenants of Lessee. Lessee covenants at all times during this Agreement to provide adequate hardware to allow for the installation and operation of the Leased Equipment.

9.    Title of the Lessor. Title to the Leased Equipment shall at all times remain in the Lessor and Lessee will at all times protect and defend, at its own cost and expense, the title of the Lessor from and against all claims, liens and legal processes of creditors of the Lessee and keep all Leased Equipment free and clear from all such claims, liens and processes. Lessee specifically authorizes Lessor to prepare and deliver any and all filing statements, notices or other documents necessary to perfect its interest in the Leased Equipment. The Leased Equipment is and shall remain personal property, and shall not become or be considered as a fixture. Upon the expiration or termination of this Agreement for any reason, the Lessee at Lessee's sole expense shall return the Leased Equipment unencumbered to Lessor at Lessor's place of business, or to such other place as Lessor and Lessee agree upon, and in the same condition as when received by Lessee, reasonable wear and tear resulting from use thereof alone excepted.

10.    Possession, Place of Use, Changes in Location. So long as Lessee shall not be in default under this Agreement, it shall be entitled to the possession and use of the Leased Equipment in accordance with the terms of this Agreement. The Leased Equipment shall be used in the conduct of the lawful business of the Lessee, shall be kept at the Site where it was installed and shall not be permanently removed from such location without the prior written consent of the Lessor. The Lessee shall not, without Lessor's express prior written consent, part with possession or control of the Leased Equipment or attempt to sell, pledge, mortgage or otherwise encumber any of the Leased Equipment or attempt to represent to sell, pledge, assign, transfer or otherwise dispose of or encumber any interest under this Agreement.

11.    Performance of Obligations.

(a)    If Lessee shall fail duly and promptly to perform any of its obligations under the provisions of this Agreement to be performed by the Lessee, the Lessor may, at its option, immediately or at any time thereafter perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense or liability incurred by Lessor in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessee to the Lessor, shall be payable by the Lessee upon demand as additional Fees.

(b)    If the Lessor shall fail duly and promptly to perform any of its obligations under the provisions of this Lease to be performed by the Lessor, the Lessee may, at its option, immediately or at any time thereafter perform the same for the account of Lessor without thereby waiving such default, and any amount paid or expense or liability incurred by Lessee in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessor to the Lessee, shall be payable by the Lessor upon demand.

Lessor's Initials DRG    Lessee's Initials MCA    Page 14

12.    Right of Inspection. Lessor shall have the right from time to time during reasonable business hours to enter upon the Lessee's premises or elsewhere for the purpose of confirming the existence, condition and maintenance of the Leased Equipment and for the provision of the services contemplated by this Agreement.

13.    Default by Lessee. There shall be deemed to be a breach of this Agreement by Lessee if:

(a)    Lessee shall default in the payment of any amount due hereunder and such default shall continue for a period of thirty (30) days; and/or

(b)    Lessee shall default in the performance of any other covenant, condition or agreement herein and such default shall continued uncured for thirty (30) days after written notice thereof to Lessee by Lessor; and/or

(c)    Lessee ceases doing business as a going concern, or becomes insolvent, or if a petition is filed by or against Lessee under the Bankruptcy Code or any amendment thereto; and/or

(d)    Lessee removes, sells, transfers, encumbers, sublets, or parts with possession of the Leased Equipment or any part thereof, or authorizes, purports to do, or attempts to do any of the foregoing.

In the event of a breach of this Agreement by Lessee as herein defined in (a) through (d) above, Lessor, at its option, shall have the right to exercise any one or more of the following remedies:

(a)    Lessor may demand forthwith that the Leased Equipment be delivered to Lessor at Lessee's expense at such place as Lessor shall designate; and/or

(b)    Lessor and/or its agents may, without notice or liability or legal process, enter into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where the Leased Equipment may be located or is believed by the Lessor to be located, and repossess all or any part of the Leased Equipment, disconnecting and separating all thereof from any other property, Lessee hereby expressly waiving all further rights to possession; and/or

(c)    Lessor may cause the provision of any and all services contemplated by Paragraph 3(a) of this Agreement; and/or

(d)    Lessor may immediately terminate this Agreement and/or declare all sums due and to become due hereunder immediately due and payable, without further obligation under this Agreement; and/or

Lessor's Initials DRG    Lessee's Initials MCA    Page 15

(e)    Lessor may recover immediately as and for liquidated damages for the breach of this Agreement, and not as a penalty, any and all unpaid Fees that accrued on or before the breach of this Agreement by Lessee, plus an amount equal to the aggregate unpaid Fees remaining hereunder for the unexpired term of this Agreement. The provisions of this Subparagraph (e) shall be in addition to, and without prejudice to, any other claims for damages or remedies to which Lessor may be entitled; and/or

(f)    Lessor may proceed by appropriate legal proceedings, as described in Paragraph 21, to enforce performance by the Lessee of any and all of the applicable covenants of this Agreement and/or seek any other remedy herein provided or that may be available at law or in equity.

Should any legal proceedings be instituted by Lessor to recover any sums due or to become due to Lessee hereunder and/or for possession of any or all of the Leased Equipment and/or the any other relief, the non-prevailing party in such legal proceedings shall pay the reasonable attorneys' fees of the prevailing party.

14.    Default by Lessor. There shall be deemed to be a breach of this Agreement by Lessor if:

(a)    Lessor shall intentionally default in the performance of any material covenants herein and such default shall continued uncured for thirty (10) days after written notice thereof to Lessor by Lessee; or

(b)    Lessor ceases doing business as a going concern, becomes insolvent, or if a petition is filed by or against Lessor under the Bankruptcy Code or any amendment thereto.

In the event of a breach of this Agreement by Lessor as herein defined in (a) through (b) above, Lessee, at its option, may terminate this Agreement and immediately return all Leased Equipment to Lessor, without any further obligation to the Lessor.

15.    Indemnity. Lessor shall indemnify and save Lessee harmless from any and all liability, loss, damage, expense, causes of action, suits, claims, or judgements arising from injury to persons or property resulting from or based upon the actual or alleged use or operation of any or all of the Leased Equipment, except for any such claim based solely upon the gross negligence or intentional wrongdoing of the Lessor; and shall, at its own cost and expense, defend any and all such suits which may be brought against Lessee, either alone or in conjunction with others upon any such liability or claim of claims and shall satisfy, pay, and discharge any and all judgements and fines that may be recovered against Lessee in any such action or actions, provided, however, that Lessor shall give Lessee written notice of any such claim or demand. Lessee shall indemnify and save Lessor harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgements arising from injury to person or property

Lessor's Initials DRG    Lessee's Initials MCA    Page 16

Case: 45C11:16-cv-00024-c   Document #: 1-7   Filed: 01/29/2016   Page 7 of 11

Case: 45C11:16-cv-00024-c   Document #: 1-7   Filed: 01/29/2016   Page 8 of 11

Case: 45C11:16-cv-00024-c   Document #: 1-7   Filed: 01/29/2016   Page 9 of 11

Case: 45C11:16-cv-00024-c   Document #: 1-7   Filed: 01/29/2016   Page 10 of 11

EXHIBIT A

Eastman Healthcare & Rehabilitation, LLC
*Effective Date of Equipment Lease and Service Agreement: September 1, 2013*

SITE:
Eastman Healthcare & Rehabilitation, LLC
556 Chester Highway
Eastman, GA 31023

LEASED EQUIPMENT and FEES:

| QTY | Item Description | Unit Price/Month | Total Monthly Fees |
|-----|------------------|------------------|--------------------|
| 1 | IP PBX | $235.00 | $235.00 |
| 1 | Managed POE Switch | Waived | |
| 4 | Analogue Connection | Waived | |
| 20 | Cisco Phone 7931 | $20.00 | $400.00 |
| 2 | Cisco Phone 7925 | $42.00 | $84.00 |
| | | Monthly Total Fees | $719.00 |

Lessor's Initials _____  Lessee's Initials _____

---



EXHIBIT H

TELECOMMUNICATIONS EQUIPMENT LEASE AND SERVICE AGREEMENT

This Telecommunications Equipment Lease and Service Agreement (the "Agreement") is entered into by and between Think Anew, LLC, 7970 Old Canton Road, Madison, Mississippi, 39110, hereinafter referred to as "Lessor," and Red Oak Healthcare & Rehabilitation, LLC, located at 1010 Barnes Street, Leonia, AR 72086, hereinafter referred to as "Lessee."

1. Lease of Equipment. Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the personal property (together with all replacements, parts, additions, repairs and accessories) described in the Addendum attached hereto as Exhibit A (the "Addendum"), to be utilized at the location described in the Addendum (the "Site"), which equipment shall be referred to herein as the "Leased Equipment". Exhibit A is incorporated herein and made a part of this Agreement by reference.

2. Term. This Lease is for a term of Sixty (60) months beginning on September 1st, 2013 (the "Initial Term"), expiring August 31, 2018. This Agreement shall automatically renew for subsequent one-year extended terms ("Extended Terms") beginning on the day immediately following the expiration of the Initial Term or any Extended Term, unless either party gives the other written notice of its intent not to renew this Agreement at least ninety (90) days prior to the expiration date of the Initial Term or any subsequent Extended Term.

3. Rentals and Services.

(a) For said term, or any portion thereof, Lessee shall pay to Lessor rental and service fees (collectively "Fees") for the Leased Equipment in the amounts set forth in Exhibit A (and for any Leased Equipment that may be added pursuant to Paragraph 24 below), payable in monthly payments, each due and payable on the first day of each month until the termination of this Agreement. All Fees shall be paid at Lessor's place of business or such other place as the Lessee may designate by written notice to the Lessee. All Fees shall be paid without notice or demand and without abatement, deduction, or set-off of any amount whatsoever. The operation and use of the Leased Equipment shall be at the risk of Lessee, and not of Lessor, and the obligation of Lessee to pay Fees hereunder shall be unconditional. In the event that any payment to be made by Lessee shall not be paid within thirty (30) days of invoice date, Lessee shall pay a delinquency charge to Lessor in an amount equal to one percent (1%) of all payments so overdue per month, and such delinquency charge shall be deemed "additional rent" for all purposes under this Agreement.

Lessor's Initials _____  Lessee's Initials _____

---

(b) Upon execution of this Lease, Lessee shall pay to Lessor a one-refundable fee ("Lease Initiation Fee") in a sum equal to one month's payment of the Fees described in Section 3(a).

(c) In consideration for the Fees, Lessor agrees to provide the following services to Lessee:

(i) Installation of the Leased Equipment at the Site(s) designated by Lessee which are reasonably acceptable to the Lessor;

(ii) Operational assistance and expertise in connection with the use of the Leased Equipment;

(iii) Management of Telco Service provider bills;

(iv) Moves, Adds, and Changes as it pertains to voicemail, phone numbers and extensions;

(v) Coordination of repair and warranty service; and

(vi) Any additional service agreed to in writing by both Lessor and Lessee.

4. Damage to Leased Equipment. Lessee shall be liable to the Lessor for any loss or damage to any Leased Equipment during the term of this Agreement, including any extensions thereof. In the event of damage to Leased Equipment which does not constitute total destruction of the entirety of the Leased Equipment, this liability may be discharged by Lessee paying to the Lessor the actual cash replacement value of any unit or units of the Leased Equipment totally destroyed and/or by paying the actual cost of repair to any unit or units which are damaged but are capable of repair, as appropriate, less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage. If such loss is totally destroyed in its entirety, the liability of the Lessee may be discharged by Lessee paying to the Lessor the actual cash replacement value of the Leased Equipment totally destroyed and all the Fees due thereon, plus all the Fees to become due thereon less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage. Lessor shall not be obligated to undertake, by litigation or otherwise, the collection of any claim against any person for loss or damage of the Leased Equipment.

5. No Warranties by Lessor as to Leased Equipment. EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, INCLUDING ANY EXHIBITS ATTACHED HERETO, LESSOR, NOT BEING THE MANUFACTURER OF THE LEASED EQUIPMENT, NOR MANUFACTURER'S AGENT FOR THIS PURPOSE, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OR CAPACITY OF THE MATERIAL, EQUIPMENT OR WORKMANSHIP IN THE LEASED EQUIPMENT, AND MAKES NO WARRANTY OR REPRESENTATION THAT THE LEASED

Lessor's Initials _____  Lessee's Initials _____

---

EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT. IT BEING AGREED THAT ALL SUCH RISKS REGARDING THE LEASED EQUIPMENT, AS BETWEEN THE LESSOR AND THE LESSEE, ARE TO BE BORNE BY THE LESSEE AT ITS SOLE RISK AND EXPENSE. THE WARRANTIES WAIVED HEREBY BY LESSEE INCLUDE, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. Notwithstanding the foregoing, Lessor does warrant and represent that the Leased Equipment will be installed by Lessor in a proper manner.

No agreement, guaranty, promise, condition, representation or warranty contrary to the foregoing shall be binding; all prior conversations, agreements or representations related hereto and/or to the Leased Equipment are integrated herein, and no modification hereof shall be binding unless in writing (with a specific reference to this provision of the Agreement) signed by Lessor.

If (1) the manufacturer of the Leased Equipment shall fail to comply with its warranty obligations to such an extent that the Leased Equipment is, or becomes, unsuitable for its intended uses, (2) the Lessee has exhausted all attempts required under the manufacturer's warranty to allow the manufacturer an opportunity to cure, and (3) the manufacturer of the Leased Equipment has so materially breached its warranty obligations that the Lessee wishes to have replacement equipment of like kind and quality supplied by the same or a different manufacturer, Lessee shall deliver written notice of such intent to Lessor by certified mail, return receipt requested. Lessor shall have ten (10) days from the date of receipt of such notice to, at Lessor's option, either (a) obtain and install replacement equipment of like kind and quality from the same or a different manufacturer, at no additional cost to Lessee, or (b) declare this Agreement terminated, in which case Lessee shall have no further obligations under this Agreement. Should Lessor so terminate this Agreement, Lessor shall have no liability whatsoever to the Lessee, including, but not limited to, liability for the interruption of business or other damages flowing from the unfitness of the Leased Equipment. In the event of any conflict between this paragraph and paragraph 22, "Limitation of Liability," the terms of paragraph 22, "Limitation of Liability" shall control.

6. Compliance With Laws. Lessee agrees, at its own cost and expense (a) to pay all charges and expenses in connection with the operation of each item of Leased Equipment, (b) to comply with all governmental laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Leased Equipment, and (c) except as specifically delegated to Lessor in this Agreement, to make all repairs and replacements required to be made to maintain the Leased Equipment in good condition, reasonable wear and tear excepted.

7. Taxes. During the term of this Agreement, Lessee agrees that, in addition to the Fees provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the Lessee in the Leased Equipment or upon the use or operation thereof and all additional Fees will promptly pay or reimburse the Lessor for all taxes (other than sales taxes paid by Lessor with respect to its purchase of the Leased Equipment), assessments and other governmental charges levied or assessed against said

Lessor's Initials _____  Lessee's Initials _____

paid by the Lessor on account of its ownership of the Leased Equipment or any part thereof, or the use or operation thereof or the leasing thereof to the Lessee.

8.    Covenants of Lessee. Lessee covenants at all times during this Agreement to provide adequate hardware to allow for the installation and operation of the Leased Equipment.

9.    Title of the Lessor. Title to the Leased Equipment shall at all times remain in the Lessor and Lessee will at all times protect and defend, at its own cost and expense, the title of the Lessor from and against all claims, liens and legal processes of creditors of the Lessee and keep all Leased Equipment free and clear from all such claims, liens and processes. Lessee specifically authorizes Lessor to prepare and deliver any and all filing statements, notices or other documents necessary to perfect its interest in the Leased Equipment. The Leased Equipment is and shall remain personal property, and shall not become or be considered as a fixture. Upon the expiration or termination of this Agreement for any reason, the Lessee at Lessor's sole expense shall return the Leased Equipment unencumbered to Lessor at Lessor's place of business, or to such other place as Lessor and Lessee agree upon, and in the same condition as when received by Lessor, reasonable wear and tear resulting from use thereof alone excepted.

10.    Possession, Place of Use, Changes in Location. So long as Lessee shall not be in default under this Agreement, it shall be entitled to the possession and use of the Leased Equipment in accordance with the terms of this Agreement. The Leased Equipment shall be used in the conduct of the lawful business of the Lessee, shall be kept at the Site where it was installed and shall not be permanently removed from such location without the prior written consent of the Lessor. The Lessee shall not, without Lessor's express prior written consent, part with possession or control of the Leased Equipment or attempt to sell, pledge, mortgage or otherwise encumber any of the Leased Equipment or attempt to purport to sell, pledge, assign, transfer or otherwise dispose of or encumber any interest under this Agreement.

11.    Performance of Obligations.

(a)    If Lessee shall fail duly and promptly to perform any of its obligations under the provisions of this Agreement to be performed by the Lessee, the Lessor may, at its option, immediately or at any time thereafter perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense or liability incurred by Lessor in such performance, together with interest, at the lower of the highest lawful interest rate or one percent (1%) per month, until paid by the Lessee to the Lessor, shall be payable by the Lessee upon demand as additional Fees.

(b)    If the Lessor shall fail duly and promptly to perform any of its obligations under the provisions of this Lease to be performed by the Lessor, the Lessee may, at its option, immediately or at any time thereafter perform the same for the account of Lessor without thereby waiving such default, and any amount paid or expense or liability incurred by Lessee in such performance, together with interest, at the lower of the highest lawful interest rate or one percent (1%) per month, until paid by the Lessor to the Lessee, shall be payable by the Lessor upon demand.

Lessor's Initials [illegible]    Lessee's Initials [illegible]    Page 14

12.    Right of Inspection. Lessor shall have the right from time to time during reasonable business hours to enter upon the Lessor's premises or elsewhere for the purpose of confirming the existence, condition and maintenance of the Leased Equipment and for the provision of the services contemplated by this Agreement.

13.    Default by Lessee. There shall be deemed to be a breach of this Agreement by Lessee if:

(a)    Lessee shall default in the payment of any amount due hereunder and such default shall continue for a period of thirty (30) days; and/or

(b)    Lessee shall default in the performance of any other covenant, condition or agreement herein and such default shall continued uncured for thirty (30) days after written notice thereof to Lessee by Lessor; and/or

(c)    Lessee ceases doing business as a going concern, or becomes insolvent, or if a petition is filed by or against Lessee under the Bankruptcy Code or any amendment thereto; and/or

(d)    Lessee removes, sells, transfers, encumbers, sublets, or parts with possession of the Leased Equipment or any part thereof, or authorizes, purports to do, or attempts to do any of the foregoing.

In the event of a breach of this Agreement by Lessee as herein defined in (a) through (d) above, Lessor, at its option, shall have the right to exercise any one or more of the following remedies:

(a)    Lessor may demand forthwith that the Leased Equipment be delivered to Lessor at Lessor's expense at such place as Lessor shall designate; and/or

(b)    Lessor and/or its agents may, without notice or liability or legal process, enter into any premises of or under control or agency of Lessee or any space of Lessee where the Leased Equipment may be located or is believed by the Lessor to be located, and repossess all or any part of the Leased Equipment, disconnecting and separating all thereof from any other property, Lessor hereby expressly waiving all further rights to possession; and/or

(c)    Lessor may cease the provision of any and all services contemplated by Paragraph 3(a) of this Agreement; and/or

(d)    Lessor may immediately terminate this Agreement and/or declare all sums due and to become due hereunder immediately due and payable, without further obligation under this Agreement; and/or

Lessor's Initials [illegible]    Lessee's Initials [illegible]    Page 15

(e)    Lessor may recover immediately as and for liquidated damages for the breach of this Agreement, and not as a penalty, any and all unpaid Fees that accrued on or before the breach of this Agreement by Lessee, plus an amount equal to the aggregate unpaid Fees remaining hereunder for the unexpired term of this Agreement. The provisions of this Subparagraph (e) shall be in addition to, and without prejudice to, any other claims for damages or remedies to which Lessor may be entitled; and/or

(f)    Lessor may proceed by appropriate legal proceedings, as described in Paragraph 21, to enforce performance by the Lessee of any and all of the applicable covenants of this Agreement and/or seek any other remedy herein provided or that may be available at law or in equity.

Should any legal proceedings be instituted by Lessor to recover any sums due or to become due to Lessor hereunder and/or for possession of any or all of the Leased Equipment and/or for any other relief, the non-prevailing party in such legal proceedings shall pay the reasonable attorneys' fees of the prevailing party.

14.    Default by Lessor. There shall be deemed to be a breach of this Agreement by Lessor if:

(a)    Lessor shall substantially default in the performance of any material covenant herein and such default shall continued uncured for thirty (30) days after written notice thereof to Lessor by Lessee; or

(b)    Lessor ceases doing business as a going concern, becomes insolvent, or if a petition is filed by or against Lessor under the Bankruptcy Code or any amendment thereto.

In the event of a breach of this Agreement by Lessor as herein defined in (a) through (b) above, Lessee, at its option, may terminate this Agreement and immediately return all Leased Equipment to Lessor, without any further obligation to the Lessor.

15.    Indemnity. Lessee shall indemnify and save Lessor harmless from any and all liability, loss, damage, expense, causes of action, suits, claims, or judgements arising from injury to person or property resulting from or based upon the actual or alleged use or operation of any or all of the Leased Equipment, except for any such claim based solely upon the gross negligence or intentional wrongdoing of the Lessor; and shall, in its own cost and expense, defend any and all such suits which may be brought against Lessor, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay, and discharge any and all judgements and fines that may be recovered against Lessee in any such action or action, provided, however, that Lessor shall give Lessee written notice of any such claim or demand. Lessor shall indemnify and save Lessee harmless from any and all liability, loss, damage, expense, causes of action, suits, claims or judgements arising from injury to person or property

Lessor's Initials [illegible]    Lessee's Initials [illegible]    Page 16

resulting from or based upon the installation or maintenance of the Leased Equipment, or the gross negligence or intentional wrongdoing of the Lessor, and shall, at its own cost and expense, defend any and all such suits which may be brought against Lessee, either alone or in conjunction with others upon any such liability or claim or claims and shall satisfy, pay and discharge any and all judgments and fines that may be recovered against Lessee in any such action or actions, provided, however, that Lessor shall give Lessee prompt written notice of any such claim or demand.

16.    Assignment. This Agreement and all rights of Lessor hereunder shall be assignable by Lessor without Lessee's consent, but Lessee shall not be obligated to pay any assignee of the Lessor except after written notice of such assignment from the Lessor. Without the prior written consent of Lessor, the Lessee shall not assign this Agreement or its interest hereunder nor enter into any sublease with respect to the Leased Equipment covered hereby.

17.    Further Assurances. Either party shall execute and deliver the other party, upon request, such instruments and assurances as such requesting party deems necessary or advisable for the confirmation or perfection of this Agreement and the parties' respective rights hereunder.

18.    Notices. All notices relating hereto shall be delivered in person to an officer of the Lessor or Lessee, or shall be mailed by certified mail to Lessor or Lessee at its respective address set forth below or at any later address last known to the sender.

If to Lessor:        Think Anew, LLC
                    Attn: Don Glidewell
                    P.O. Box 669
                    Madison, MS 39130

If to Lessee:        New Beginnings Care, LLC
                    Attn: Legal Department
                    4704 Kleiman Pike
                    Hixson, TN 37343

19.    Remedies, Waivers. No remedy hereunder shall be exclusive of any other remedy herein or of any other remedy otherwise available at law or in equity, but each shall be cumulative and in addition to every other remedy. A waiver of a default or failure to strictly construe or enforce the terms hereof shall not be a waiver of any other or a subsequent default or a waiver of the right to demand strict compliance.

20.    Irrevocability. Except in the event of a default by Lessor which is not timely cured in accordance with the terms of this Agreement, this Agreement is irrevocable for the full term hereof (including Extended Terms, if any) as set forth in Paragraph 2 hereof and for the aggregate Fees herein reserved in Paragraph 3, and the Fees shall not abate by reason of termination of Lessor's right of possession and/or the taking of possession by the Lessor or for

Lessor's Initials [illegible]    Lessee's Initials [illegible]    Page 17

any other reason. Delinquent installments of Fees shall bear interest at the highest lawful contract rate or one percent (1%) per month, whichever be the lesser.

21.    Applicable Law; Arbitration. This Agreement shall be construed and interpreted under the laws of the State of Mississippi, regardless of any applicable choice of laws provision. ANY DISPUTE UNDER, OR ARISING OUT OF THE SUBJECT MATTER OF, THIS AGREEMENT WHICH CANNOT BE RESOLVED BY THE PARTIES SHALL BE SUBMITTED TO BINDING ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION UNLESS THE PARTIES MUTUALLY AGREE OTHERWISE. THE ARBITRATION SHALL BE CONDUCTED IN MADISON COUNTY, MISSISSIPPI, BEFORE AN ARBITRATOR TO BE MUTUALLY AGREED UPON BY THE PARTIES HERETO. NO PARTY TO ANY DISPUTE SHALL BE ENTITLED TO ANY PUNITIVE DAMAGES. THE ARBITRATOR'S FEES SHALL BE SHARED EQUALLY BY THE PARTIES. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND WILL BE ENTITLED TO ENFORCEMENT IN ALL JURISDICTIONS, INCLUDING WITHOUT LIMITATION THE COURTS OF THE STATE WHERE THE LESSEE IS LOCATED. To the extent not covered by the mandatory arbitration provision above, all controversies hereunder shall be adjudicated only in the state courts located in, or in the federal courts whose jurisdiction covers, Madison County, Mississippi.

22.    Limitation of Liability. If Lessor is found to be in material breach of this Agreement, Lessee's sole remedy against Lessor shall be the termination of this Agreement and cessation of Lessee's future liability for any of the Fees specified in paragraph 3. Lessor shall have no other liability whatsoever to the Lessee, including, but not limited to, liability for interruption of business or other consequential damages. If any other provision of this Agreement is found to be in conflict with this paragraph, the provisions of this paragraph shall control.

23.    Entire Agreement. This instrument constitutes the entire agreement between Lessor and Lessee; and it shall not be amended, altered or changed except by a written agreement signed by the parties hereto.

24.    Amendments to Exhibit A. This Agreement may be amended only by written agreement signed by both parties, as set out above; provided, however, from time to time during any term of this Agreement, Lessor and Lessee may mutually consent in writing (via e-mail or fax request or confirmation, or similar writing) to any addition to or revision of the list and/or pricing of the Leased Equipment contained in Exhibit A. Lessor and Lessee may also mutually consent in writing to revise, or add any additional location to, the Site listed on Exhibit A. All Leased Equipment attributable to such revised or additional Site shall be utilized at that location, in accordance with other provisions of this Agreement.

Any such addition(s) or revision(s) as referenced in this Paragraph will be reflected in subsequent billing statements submitted to Lessee and will be deemed fully consented to and accepted by Lessee unless Lessee is notified otherwise in writing within 30 days of the date of the initial billing in which such addition or revision is referenced. In all cases, the addition or

Lessor's Initials _____    Lessee's Initials _____    Page 18

revision shall be deemed fully accepted once any Fees are paid by Lessee in connection with same. All such additions or revisions shall be deemed as incorporated into and made a part of this Agreement and Exhibit A without the need for further reference thereto, and will be subject to all terms and conditions of this Agreement and Exhibit A as if included therein.

25.    Severability; Captions. If any clause or provision of this Agreement is determined to be illegal, invalid, or unenforceable by any rule of law, public policy consideration, or court of competent jurisdiction, then it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby. It is also the intention of the parties to this Agreement that with respect to each clause or provision that is illegal, invalid, or unenforceable, that such clause be construed and reformed to the fullest extent possible to reflect the parties' intent and to avoid such illegality, invalidity, or unenforceability. The captions of each paragraph hereof is added as a matter of convenience only and shall be considered to be of no effect in the construction of any provision of this Agreement.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Agreement to be executed by their duly authorized representatives.

TMNK AXEW, LLC                    RED OAK HEALTHCARE & REHABILITATION

By: _____    _____    By: Martha Beuvoir    Nov. 26, 2013
    Dan Oswood                        Date Signed            Date Signed
    President

Print Name: Martha C. Beuvoir

Position: VP of Business Development

Lessor's Initials _____    Lessee's Initials _____    Page 19

Continuing Guaranty for
Telecommunications Equipment Lease and Service Agreement

As the inducement company of the above-referenced Lessee herein, and as an inducement to Lessor to make and enter into the Telecommunications Equipment Lease and Service Agreement (the "Agreement") with this Lessee, the undersigned, on behalf of such Lessee, fully, absolutely, irrevocably, and unconditionally guarantees (1) the Lessee's payments of its Fees and any other sums that are payable or may become payable under this Agreement, and (2) the performance of all other obligations the Lessee may have under this Agreement, all upon the same terms, conditions, and limitations as set out in this Agreement as applicable to Lessee and without the need for demand or notice to the undersigned, all of which are hereby waived by the undersigned. This Continuing Guaranty shall include and be fully effective as to any subsequent revisions, additions, amendments, or addendums to this Agreement and/or to any Exhibit hereto, including without limitation any additional Fees and sums that may result from any addition to or revisions of the "Leased Equipment" listed in Exhibit A of this Agreement and/or the pricing thereof, whether or not the undersigned executed, had notice of, was otherwise a party to such revision, addition, amendment, or addendum. The undersigned also fully consents to be bound by the Applicable Law and Arbitration provisions of Paragraph 21 hereof.

NEW BEGINNINGS CARE, LLC

By: Martha Beuvoir    Nov. 26, 2013
                        Date Signed

Print Name: Martha C. Beuvoir    Position: VP of Business Development

Lessor's Initials _____    Lessee's Initials _____    Page 110

EXHIBIT A

Red Oak Healthcare & Rehabilitation, LLC
Effective Date of Equipment Lease and Service Agreement: September 1, 2013

SITE:
Red Oak Healthcare & Rehabilitation, LLC
1010 Bacon Street
Lonoke, AR 72086

LEASED EQUIPMENT and FEES:

| QTY | Item Description | Unit Price/Month | Total Monthly Fees |
|-----|------------------|------------------|--------------------|
| 1 | IP PBX | $250.00 | $250.00 |
| 1 | Managed POE Switch | Waived | |
| 4 | Analogue Connection | Waived | |
| 2 | Cisco Phone 7925 Chargers | Waived | |
| 22 | Cisco Phone 7931 | $40.00 | $880.00 |
| 2 | Cisco Phone 7925 | $70.00 | $140.00 |
| | | Monthly Total Fees | $1,270.00 |

Lessor's Initials _____    Lessee's Initials _____    Page 111



EXHIBIT
1

TELECOMMUNICATIONS EQUIPMENT LEASE AND SERVICE AGREEMENT

This Telecommunications Equipment Lease and Service Agreement (the "Agreement") is entered into by and between Think Anew, LLC, 7770 Old Canton Road, Madison, Mississippi, 39110, hereinafter referred to as "Lessor," and Stoneybrook Healthcare & Rehabilitation, LLC, located at 3300 Military Road, Benton, AR 72015, hereinafter referred to as "Lessee."

1.    Lease of Equipment. Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the personal property (together with all replacement parts, additions, repairs and accessories) described in the Addendum attached hereto as Exhibit A (the "Addendum"), to be utilized at the location described in the Addendum (the "Site"), which equipment shall be referred to herein as the "Leased Equipment." Exhibit A is incorporated herein and made a part of this Agreement by reference.

2.    Term. This Lease is for a term of Sixty (60) months beginning on September 1st, 2013 (the "Initial Term"), expiring August 31, 2018. This Agreement shall automatically renew for subsequent one-year extended terms ("Extended Terms") beginning on the day immediately following the expiration of the Initial Term or any Extended Term, unless either party gives the other written notice of its intent not to renew this Agreement at least ninety (90) days prior to the expiration date of the Initial Term or any subsequent Extended Term.

3.    Rentals and Services.

(a)    For said term, or any portion thereof, Lessee shall pay to Lessor rental and service fees (collectively "Fees") for the Leased Equipment in the amounts set forth in Exhibit A (and for any Leased Equipment that may be added pursuant to Paragraph 24 below), payable in monthly payments, each due and payable on the first day of each month until the termination of this Agreement. All Fees shall be paid at Lessor's place of business or any other place as the Lessor may designate by written notice to the Lessee. All Fees shall be paid without notice or demand and without abatement, deduction, or set-off of any amount whatsoever. The operation and use of the Leased Equipment shall be at the risk of Lessee, and not of Lessor, and the obligation of Lessee to pay Fees hereunder shall be unconditional. In the event that any payment to be made by Lessee shall not be paid within thirty (30) days of invoice date, Lessee shall pay a delinquency charge to Lessor in an amount equal to one percent (1%) of all payments so overdue per month, and such delinquency charge shall be deemed "additional rent" for all purposes under this Agreement.

Lessor's Initials _____    Lessee's Initials _____    Page |1

(b)    Upon execution of this lease, Lessee shall pay to Lessor a non-refundable fee ("Lease Initiation Fee") in a sum equal to one month's payment of the Fees described in Section 3(a).

(c)    In consideration for the Fees, Lessor agrees to provide the following services to Lessee:

(i)    Installation of the Leased Equipment at the Site(s) designated by Lessee which are reasonably acceptable to the Lessor;

(ii)    Operational assistance and expertise in connection with the use of the Leased Equipment;

(iii)    Management of Telco Service provider bills

(iv)    Moves, Adds, and Changes as it pertains to voicemail, phone numbers and connections;

(v)    Coordination of repair and warranty service and

(vi)    Any additional service agreed to in writing by both Lessor and Lessee.

4.    Damage to Leased Equipment. Lessee shall be liable to the Lessor for any loss or damage to any Leased Equipment during the term of this Agreement, including any extensions thereof. In the event of damage to any Leased Equipment which does not constitute total destruction of the entirety of the Leased Equipment, and liability may be discharged by Lessee paying to the Lessor the actual cash replacement value of any unit or units of the Leased Equipment totally destroyed and/or by paying the actual cost of repair to any unit or units which are damaged but are capable of repair, as appropriate, less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss or damage. If the Leased Equipment is totally destroyed in its entirety, the liability of the Lessee may be discharged by Lessee paying to the Lessor the actual cash replacement value of the Leased Equipment totally destroyed and all the Fees due thereon, plus all the Fees to become due thereon less the net amount of the recovery, if any, actually received by Lessee from insurance or otherwise for such loss or damage. Lessee shall not be obligated to indemnify, by litigation or otherwise, the collection of any claim against any person for loss or damage of the Leased Equipment.

5.    No Warranties. In Lease as to Leased Equipment.    EXCEPT AS SPECIFICALLY CONTAINED IN THIS AGREEMENT, INCLUDING ANY EXHIBITS ATTACHED HERETO, LESSOR, NOT BEING THE MANUFACTURER OF THE LEASED EQUIPMENT, NOR MANUFACTURER'S AGENT FOR THIS PURPOSE, MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, DESIGN OR CONDITION OF, OR AS TO THE QUALITY OR CAPACITY OF THE MATERIAL, EQUIPMENT OR WORKMANSHIP IN THE LEASED EQUIPMENT, AND MAKES NO WARRANTY OR REPRESENTATION THAT THE LEASED

Lessor's Initials _____    Lessee's Initials _____    Page |2

EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT, IT BEING AGREED THAT ALL SUCH RISKS REGARDING THE LEASED EQUIPMENT, AS BETWEEN THE LESSOR AND THE LESSEE, ARE TO BE BORNE BY THE LESSEE AT ITS SOLE RISK AND EXPENSE. THE WARRANTIES WAIVED HEREBY BY LESSEE INCLUDE, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. Notwithstanding the foregoing, Lessor does warrant and represent that the Leased Equipment will be installed by Lessor in a proper manner.

No agreement, guaranty, promise, condition, representation or warranty contrary to the foregoing shall be binding; all prior conversations, agreements or representations related hereto and/or to the Leased Equipment are integrated herein, and no modification hereof shall be binding unless in writing (with a specific reference to this provision of the Agreement) signed by Lessor.

If (1) the manufacturer of the Leased Equipment shall fail to comply with its warranty obligations to such an extent that the Leased Equipment is, or becomes, unsuitable for its intended uses, (2) the Lessee has exhausted all attempts required under the manufacturer's warranty to allow the manufacturer an opportunity to cure, and (3) the manufacturer of the Leased Equipment has so materially breached its warranty obligations that the Lessee wishes to have replacement equipment of like kind and quality supplied by the same or a different manufacturer, Lessee shall deliver written notice of such breach to Lessor by certified mail, return receipt requested. Lessor shall have ten (10) days from the date of receipt of such notice to, at Lessor's option, either (1) obtain and install replacement equipment of like kind and quality from the same or a different manufacturer, or no additional cost to Lessee, or (2) declare this Agreement terminated, in which case Lessee shall have no further obligations under this Agreement. Should Lessor so terminate this Agreement, Lessee shall have no liability whatsoever to the Lessee, including, but not limited to, liability for interruption of business or other damages flowing from the inability of the Leased Equipment. In the event of any conflict between this paragraph and paragraph 22, "Limitation of Liability," the terms of paragraph 22, "Limitation of Liability" shall control.

6.    Compliance With Laws. Lessee agrees, at its own cost and expense (a) to pay all charges and expenses in connection with the operation of each item of Leased Equipment, (b) to comply with all governmental laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Leased Equipment, and (c) except as specifically delegated to Lessor in this Agreement, to make all repairs and replacements required to be made to maintain the Leased Equipment in good condition, reasonable wear and tear excepted.

7.    Taxes. During the term of this Agreement, Lessee agrees that, in addition to the Fees provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the Lessee in the Leased Equipment or upon the use or operation thereof, and an additional item will promptly pay or reimburse the Lessor for all taxes (other than sales taxes paid by Lessor with respect to its purchase of the Leased Equipment), assessments and other governmental charges levied or assessed against and

Lessor's Initials _____    Lessee's Initials _____    Page |3

paid by or on account of its ownership of the Leased Equipment or any part thereof, or the use or operation thereof or the leasing thereof to the Lessee.

8.    Covenants of Lessee. Lessee covenants at all times during this Agreement to provide adequate hardware to allow for the installation and operation of the Leased Equipment.

9.    Title of the Lessor. Title to the Leased Equipment shall at all times remain in the Lessor and Lessee will at all times protect and defend, at its own cost and expense, the title of the Lessor from and against all claims, liens and legal processes of creditors of the Lessee and keep all Leased Equipment free and clear from all such claims, liens and processes. Lessee specifically authorizes Lessor to prepare and deliver any and all filing statements, notices or other documents necessary to perfect its interest in the Leased Equipment. The Leased Equipment is and shall remain personal property, and shall not become or be considered in a fixture. Upon the expiration or termination of this Agreement for any reason, the Lessee at Lessee's sole expense shall return the Leased Equipment unencumbered to Lessor at Lessor's place of business, or to such other place as Lessor and Lessee agree upon, and in the same condition as when received by Lessee, reasonable wear and tear resulting from use thereof alone excepted.

10.    Possession, Place of Use, Changes in Location. So long as Lessee shall not be in default under this Agreement, it shall be entitled to the possession and use of the Leased Equipment in accordance with the terms of this Agreement. The Leased Equipment shall be used in the conduct of the lawful business of the Lessee, shall be kept at the Site where it was installed and shall not be permanently removed from such location without the prior written consent of the Lessor. The Leased Equipment shall not, without Lessee's express prior written consent, part with possession or control of the Leased Equipment or attempt to sell, pledge, mortgage or otherwise encumber any of the Leased Equipment or attempt to pledge or sell, pledge, assign, transfer or otherwise dispose of or encumber any interest under this Agreement.

11.    Performance of Obligations.

(a)    If Lessee shall fail duly and promptly to perform any of its obligations under the provisions of this Agreement to be performed by the Lessee, the Lessor may, at its option, immediately or at any time thereafter perform the same for the account of Lessee without thereby waiving such default, and any amount paid or expense or liability incurred by Lessor in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessee to the Lessor, shall be payable by the Lessee upon demand as additional Fees.

(b)    If the Lessor shall fail duly and promptly to perform any of its obligations under the provisions of this Lease to be performed by the Lessor, the Lessee may, at its option, immediately or at any time thereafter perform the same for the account of Lessor without thereby waiving such default, and any amount paid or expense or liability incurred by Lessee in such performance, together with interest, at the lesser of the highest lawful contract rate or one percent (1%) per month, until paid by the Lessor to the Lessee, shall be payable by the Lessor upon demand.

Lessor's Initials _____    Lessee's Initials _____    Page |4

---

**Top-left panel**

Case: 45CI1:15-cv-00024-c   Document #: 1-6   Filed: 01/29/2016   Page 9 of 11

revision shall be deemed fully accepted once any Fees are paid by Lessee in connection with same. All such additions or revisions shall be deemed as incorporated herein and made a part of this Agreement and Exhibit A without the need for further reference thereto, and will be subject to all terms and conditions of this Agreement and Exhibit A as if included therein.

25.   *Severability Clauses.*   If any clause or provision of this Agreement is determined to be illegal, invalid, or unenforceable by any rule of law, public policy consideration, or court of competent jurisdiction, then it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby. It is also the intention of the parties to this Agreement that with respect to each clause or provision that is illegal, invalid, or unenforceable, that such clause be construed and enforced to the fullest extent possible to reflect the parties' intent and to avoid such illegality, invalidity, or unenforceability. The caption of each paragraph hereof is added as a matter of convenience only and shall be considered to be of no effect in the construction of any provision of this Agreement.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Agreement to be executed by their duly authorized representatives.

THINK ANEW, LLC                    STONEYBROOK HEALTHCARE & REHABILITATION LLC

By:                                By: Martha C. Abercrombie   12/2/13
   Don Gutbrod                         Date Signed
   President
                                   Print Name: Martha C. Abercrombie

                                   Position: VP of Business Development

Lessor's Initials DRG   Lessee's Initials MCA          Page 19

---

**Top-right panel**

Case: 45CI1:15-cv-00024-c   Document #: 1-9   Filed: 01/29/2016   Page 10 of 11

Continuing Guaranty for
Telecommunications Equipment Lease and Service Agreement

As the management company of the above-referenced Lessee herein, and as an inducement to Lessor to make and enter into this Telecommunications Equipment Lease and Service Agreement (the "Agreement") with this Lessee, the undersigned, on behalf of such Lessee, fully, absolutely, irrevocably, and unconditionally guarantees (1) the Lessee's payments of its Fees and any other sums that are payable or may become payable under this Agreement, and (2) the performance of all other obligations the Lessee may have under this Agreement, all upon the same terms, conditions, and limitations as set out in this Agreement as applicable to Lessee and without the need for demand or notice to the undersigned, all of which are hereby waived by the undersigned. This Continuing Guaranty shall include and be fully effective as to any subsequent revisions, additions, amendments, or addendums to this Agreement and/or to any Exhibit hereto, including without limitation any additional Fees and sums that may result from any additions to or revisions of the "Leased Equipment" listed in Exhibit A of the Agreement and/or the pricing thereof, whether or not the undersigned executed, had notice of, was otherwise a party to such revision, addition, amendment, or addendum. The undersigned also fully consents to be bound by the Applicable Law and Arbitration provisions of Paragraph 21 hereof.

NEW BEGINNINGS CARE, LLC

By: Martha C. Abercrombie   12/2/13
   Date Signed

Print Name: Martha C. Abercrombie   Position: VP of Business Development

Lessee's Initials DRG   Lessee's Initials MCA          Page 10

---

**Bottom-left panel**

Case: 45CI1:15-cv-00024-c   Document #: 1-9   Filed: 01/29/2016   Page 11 of 11

EXHIBIT A

Stoneybrook Healthcare & Rehabilitation, LLC
*Effective Date of Equipment Lease and Service Agreement:  September 1, 2013*

SITE:
Stoneybrook Healthcare & Rehabilitation, LLC
3300 Military Road
Benton, AR 72015

LEASED EQUIPMENT and FEES:

| QTY | Item Description | Unit Price/Month | Total Monthly Fees |
|---|---|---|---|
| 1 | IP PBX | $250.00 | $250.00 |
| 1 | Managed POE Switch | Waived | |
| 4 | Analogue Connection | Waived | |
| 2 | Cisco Phone 7925 Chargers | Waived | |
| 16 | Cisco Phone 7931 | $40.00 | $640.00 |
| 2 | Cisco Phone 7925 | $70.00 | $140.00 |
| | | Monthly Total Fees | $1,030.00 |

Lessee's Initials DRG   Lessee's Initials MCA          Page 11

---

**Bottom-right panel**

Case: 45CI1:15-cv-00024-c   Document #: 1-10   Filed: 01/29/2016   Page 1 of 5

 

**EXHIBIT J**

UNCONDITIONAL GUARANTY

WHEREAS, New Beginnings Care, LLC, a Tennessee limited liability company, and all its subsidiaries listed on Exhibit A hereinafter called the Debtor, desires to obtain from time to time on credit goods and services of and from Think Anew, LLC, a Mississippi limited liability company, located at 162 Watford Parkway Drive, Ste 201, Canton, MS 39046 hereinafter called the Company; and

WHEREAS, the Company requires security for such accounts receivable and for all other indebtedness or liability of the Debtor to it and I, Debbie Jones, the undersigned, is interested in said Debtor and is willing to become surety for payment of the same to the Company.

NOW, THEREFORE, in consideration of the premises and of the sum of One Dollar ($1.00) to each of us in hand paid, the receipt whereof is hereby acknowledged, and of other considerations deemed valuable at law, I, Debbie Jones, for myself and my heirs, executors and administrators, guarantee and warrant unto the Company, its successors or assigns, the prompt payment at maturity of each and all of the notes, checks, drafts, bills of exchange, accounts receivable, completion of surety bonds and other obligations of every name and kind, which the Company now has, or which it may hereafter have, hold, purchase or obtain.

This guaranty shall apply and guarantee any ultimate balance which shall remain due to the Company from the Debtor and shall be considered a continuing guarantee of any and all liabilities of the Debtor to the Company or any renewals of same in whole or in part.

And I so likewise for myself, my heirs and my personal representatives, hereby expressly waive (a) notice of acceptance of this guaranty and of all extensions of credit to the Debtor; (b) presentment and demand for payment of any of the debts of the Debtor; (c) protest and notice of dishonor or of default to the undersigned or to any other party with respect to any of the debts of the Debtor or with respect to any security therefore; (d) all other notices to which the undersigned might otherwise be

Page - 1 of 4

entitled; and (e) demand for payment under this guaranty.

And I, for myself, heirs and personal representatives, do hereby agree that the Company may, whether before or after my death, from time to time renew or extend the time of payment of any debts or liabilities guaranteed hereunder and grant and allow such indulgences or compromises in connection therewith as it may deem advisable or expedient, and may likewise release or relinquish any security or securities held therefor without the same discharging, releasing, or in any manner affecting my liability to it under this guaranty; and I do hereby expressly agree that in case of non-payment of such accounts receivable and other obligations, in whole or in part, when due to pay the same with interest thereon upon demand; that suit may be brought by the Company, its successors or assigns, against me, at the option of the Company, its successors or assigns, without bringing suit against the Debtor.

This is a guaranty of payment and not of collection. The liability of the undersigned on this guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against the Debtor or any other person, nor against securities or liens available to the Company, its successors, endorsees or assigns.

The undersigned waives any right to require that an action be brought against the Debtor or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of the Company in favor of the Debtor or any other person. If the debts of the Debtor are partially paid through the election of the Company, its successors, endorsees or assigns, to pursue any of the remedies mentioned in this instrument, or if such debts are otherwise partially paid, the undersigned shall remain liable for any balance of such debts up to the limit hereinabove stated.

I likewise further agree for myself, my heirs and my personal representatives, that I shall not be subrogated to, and will not enforce on our part, any right of action which the Company may have against the Debtor until every debt, demand or obligation then due and payable, or to become due and payable, from the said Debtor to the Company shall have been paid in full.

This instrument is intended to be a full, complete and perfect guarantee and indemnity to the Company to the extent of and for any indebtedness liability of any kind owing by the Debtor to the

Page - 2 - of 4

Company from time to time and to be valid and continuous without other or further notice to us or any of us, notwithstanding the death of any one or more of the parties hereto, until notice in writing of withdrawal of this guarantee, sent by registered mail to the Company at the address cited above, signed by the parties hereto or any one of them, or by the personal representative of a deceased party, has actually been received by said Company, and then only as to transactions subsequent to the time of said notice.

This instrument constitutes the entire agreement between the parties, and no waivers or modifications shall be valid unless they are reduced to writing, duly executed by the party to be charged thereby, and expressly approved in writing by an officer of the Company.

I agree that should it become necessary for the Company to enter suit against me, that I promise to pay all costs of collection including reasonable attorney's fees.

This instrument shall be construed in accordance with the laws of the State of Mississippi.

WITNESS the following signature on the 10 day of June, 2015.

DEBBIE JONES, Guarantor
4704 Hixson Pike
Hixson, TN 37343-4840

Page - 3 - of 4

EXHIBIT A

| Facility | Facility Address |
|---|---|
| New Beginnings Care | 4704 Hixson Pike, Hixson, TN 37343 |
| Abbeville Healthcare & Rehab | 206 Main Street East, Abbeville, GA 31001 |
| Brookside Health & Rehab* | 800 Brookside Drive, Little Rock, AR 72205 |
| Campus Health Care Center | 196 Colonial Drive, Youngstown, OH 44505 |
| Cedarcreek Healthcare & Rehab | 4121 Tod Avenue NW, Warren, OH 44485 |
| Eastman Healthcare & Rehab | 556 Chester Highway, Eastman, GA 31023 |
| Edwards Retirement Nursing | 1520 NE Grand Blvd, Oklahoma City, OK 73117 |
| Goodwill Nursing Home | 4373 Houston Ave, Macon, GA 31206 |
| Jeffersonville Healthcare & Rehab, LLC | 115 Spring Valley Drive, Jeffersonville, GA 31044 |
| John Reed Nursing Home | 124 John Reed Road, Limestone, TN 37681 |
| Mount Pleasant Health & Rehab | 904 Hidden Acres Drive, Mount Pleasant, TN 38474 |
| Oceanside Nursing & Rehab Center | 77 Van Horne Avenue, Tybee Island, GA 31328 |
| Pinewood Nursing Center | 433 N McGriff Street, Whigham, GA 39997 |
| Red Oak Healthcare & Rehab | 1010 Barnes Street, Leesloe, AR 72086 |
| Rockmart Healthcare & Rehab | 223 Thorne Street, Rockmart, GA 30153 |
| Savannah Beach Nursing & Rehab | 77 Van Horne Avenue, Tybee Island, GA 31328 |
| Stonebrook Health & Rehab* | 7200 Hilton Road, Bankrupt |
| Woodlands Healthcare | 625 Coastal Hwy 17 N, Midway, GA 31320 |

*Existing debt prior to new management

Signed: Debbie Jones    Date 6/10/15
DEBBIE JONES, Guarantor
4704 Hixson Pike
Hixson, TN 37343-4840

Page - 4 - of 4

FEE BILL, CIVIL CASES, CIRCUIT COURT

State of Mississippi
Madison County

THINK ANEW, LLC VS DEBBIE JONES

Case # CI-2016-0024    Acct #        Paid By CHECK 208282    Rct# 71786

| | | |
|---|---|---|
| CV CLERK'S FEE | | 85.00 |
| CV LAW LIBRARY | | 2.50 |
| CV COURT REPORTER TAX | | 10.00 |
| CV COURT EDUCATION | | 2.00 |
| CV COURT ADMINISTRATOR | | 2.00 |
| CV CIVIL LEGAL ASSISTANCE FUND | | 5.00 |
| CV COMPREHENSIVE ELECTRONIC CT | | 10.00 |
| CV JURY TAX | | 3.00 |
| CV CONSTITUENTS FB | | .50 |
| CV RECORDS MANAGEMENT PROGRAM | | 1.00 |
| CV-JUDICIAL SYS OPERATION FUND | | 40.00 |

Total    $    161.00

Payment received from COPELAND COOK

Transaction    60505 Received  1/29/2016 at 16:17 Drawer    1 I.D. MM

Current Balance Due        $0.00        Receipt Amount $    161.00

By _____ D.C. ANITA WRAY, Circuit Clerk

Case # CT-2016-0024    Acct #        Paid By CHECK 208282    Rct# 71786

## THINKANEW

| | Corporate | Eastman | Edwards Redeemer | Mt Pleasant | Pinewood | Woodlands | TOTAL |
|---|---|---|---|---|---|---|---|
| MIS | $ 800.26 | $ 800.26 | $ 800.26 | $ 800.26 | $ 999.88 | $ 999.88 | |
| Phones | $ 525.00 | $ 2,510.71 | $ 1,408.11 | $ 182.70 | $ 1,084.49 | $ 2,321.86 | |
| Internet* | $ 125.00 | $ 108.40 | $ - | $ 149.99 | $ - | $ - | |
| Office365** | $ 1,588.63 | $ - | $ - | $ - | $ - | $ - | |
| Monthly Charges | $ 2,789.15 | $ 2,202.12 | $ 2,308.39 | $ 1,438.89 | $ 1,382.44 | $ 1,382.24 | |
| | $ 5,828.04 | $ 5,621.49 | $ 4,516.76 | $ 2,571.84 | $ 3,466.81 | $ 4,703.98 | $ 26,708.92 |

## CARESERV

| | Corporate | Eastman | Edwards Redeemer | Mt Pleasant | Pinewood | Woodlands | TOTAL |
|---|---|---|---|---|---|---|---|
| Internet/MIS/Phones | $ 1,450.26 | $ 650.00 | $ 798.00 | $ 332.69 | $ 650.00 | $ 650.00 | |
| Monthly Charges*** | $ 2,968.47 | $ 1,999.75 | $ 1,759.75 | $ 1,159.75 | $ 1,499.75 | $ 1,519.75 | |
| | $ 4,418.73 | $ 2,649.75 | $ 2,557.75 | $ 1,492.44 | $ 2,149.75 | $ 2,169.75 | $ 15,438.17 |

| | | | | | | | TOTAL SAVINGS |
|---|---|---|---|---|---|---|---|
| MONTHLY SAVINGS | $ (1,409.31) | $ (2,971.74) | $ (1,959.01) | $ (1,079.40) | $ (1,317.06) | $ (2,534.23) | $ (11,270.75) |
| ANNUAL SAVINGS | $ (16,911.72) | $ (35,660.88) | $ (23,508.12) | $ (12,952.80) | $ (15,804.72) | $ (30,410.76) | $ (135,249.00) |

*Included in Phones charges for Edwards Redeemer, Pinewood and Woodlands
**For all locations
***Includes Office365; additional charges may be incurred initially due to travel, installations, etc.

